**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

JYLL BRINK, on her own behalf,
and on behalf of those similarly situated,
    Plaintiff,

                                            CASE NO.: 0:15-cv-60334-WPD

v.

RAYMOND JAMES & ASSOCIATES, INC.,
    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS COMPLAINT AND INCORPORATED
MEMORANDUM OF LAW OR, IN THE ALTERNATIVE,
<u>MOTION TO STRIKE AND FOR MORE DEFINITE STATEMENT</u>**

COMES NOW Defendant Raymond James & Associates, Inc. ("RJA"), by and through its undersigned counsel, and moves to dismiss Plaintiff Jyll Brink's ("Brink") Complaint or, in the alternative, moves to strike certain portions of Brink's Complaint and moves for a more definite statement as to Brink's Count I for breach of contract.  In support thereof, RJA states as follows:

1. Brink's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted.

2. Count I (Breach of Contract) fails because it is premised on the breach of a provision that does not in fact exist in what Brink claims to be the relevant agreement (the "Passport Agreement").  And while Brink's inability to identify a specific provision of the Passport Agreement that RJA allegedly breached is alone grounds for dismissal, a further deficiency justifies the dismissal being with prejudice:  the express terms of the agreement attached to Brink's Complaint directly contradict the expansive interpretation argued for by Brink.  Because leave to amend the Complaint could not cure Brink's breach of contract claim,

which is premised on a non-existent term that is contradicted by the agreement's plain language, the dismissal of Count I should be with prejudice.

3.   Count II (Negligence) fails for three reasons.  First, the negligence claim runs afoul of the independent tort rule inasmuch as the conduct of RJA that Brink complains of is the exact same conduct underlying Brink's breach of contract claim (namely, Brink's allegation that RJA charged her an unreasonably high Processing Fee).  Second, the regulatory rule that Brink contends establishes the standard of care breached by RJA – FINRA Rule 2122 – did not exist at the time of the allegedly offending conduct.  FINRA Rule 2122 was not implemented until November 21, 2014, more than two years after Brink closed her account with RJA.  More importantly, the predecessor to FINRA Rule 2122 that was in effect at the time of Brink's relationship with RJA – NASD Rule 2430 – specifically does not apply to fees related to the execution of trades.  Because the Processing Fee expressly relates to the execution of trades – as even Brink herself acknowledges – Brink's negligence claim fails, and Count II should also be dismissed with prejudice.

4.   To the extent this Court denies RJA's motion to dismiss, RJA requests that the Court:  (1) strike paragraphs 28, 29, 30, 31, and 44 of the Complaint, as well as Exhibits B, C, and D to the Complaint, because the information therein relates to sanctions levied against other brokers/dealers and is both irrelevant to the claims in this case and prejudicial in that it suggests, albeit improperly,  that RJA's conduct was inappropriate; (2) strike Brink's reference to FINRA Rule 2122 in paragraphs 8, 9, 59, and 60 of the Complaint because FINRA Rule 2122 is immaterial in that it was not in effect at the time of the complained of conduct and therefore cannot establish a relevant standard of care; and (3) order Brink to make a more definite statement by alleging exactly which provision of the Passport Agreement was allegedly breached

by RJA and clarifying her allegations about the labeling of the allegedly improper Processing Fee charged by RJA, when and how many times it was charged, and how Exhibit F to the Complaint is an example of the Processing Fee.

WHEREFORE, RJA respectfully requests that the Court enter an order dismissing Brink's Complaint or, in the alternative, striking certain portions and ordering a more definite statement, and award whatever other relief it deems just and proper.

## MEMORANDUM OF LAW IN SUPPORT OF RJA'S MOTION TO DISMISS

A. Introduction

The gravamen of Brink's putative class action is that RJA charged its customers an unauthorized and unreasonable Processing Fee for executing trades in its customers' investment accounts. Even though the exact amount of this fee was disclosed in the agreement signed by every customer, Brink contends that RJA breached those agreements because the Processing Fee was higher than the actual expenses incurred by RJA in executing and clearing trades. Brink further argues that she and her putative class are entitled to tort damages because RJA breached the duty of care owed to its customers by charging a Processing Fee that bore no reasonable relationship to the direct and actual costs in executing and clearing its customers' transactions. Each of Brink's claims fails as a matter of law. A claim for breach of contract cannot lie where a party explicitly complies with the obligations imposed upon it in the contract. Furthermore, a negligence claim cannot lie where the essence of the claim is a breach of contract claim and where the alleged standard of care did not exist at the time of the allegedly offending conduct and, more importantly, where the alleged governing regulatory rule specifically exempts RJA's Processing Fee from its scope. This court should dismiss the Complaint in its entirety with prejudice.

B.  Standard of Review

For a complaint to survive dismissal, it must address all the material elements of each cause of action alleged. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the court must accept all of the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff, "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts" will not prevent dismissal. Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 500 F.3d 1293, 1306 (11th Cir.2007). To avoid dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. In other words, a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

C.  Argument

**1.  Count I (Breach of Contract)**

Brink's Count I should be dismissed because the breach alleged by Brink is premised on a contract term that not only does not exist in the Passport Agreement, but is contradicted by the agreement's express terms. The Passport Agreement executed by Brink and RJA contains an agreement by Brink to pay a "Processing Fee" to RJA for executing and clearing trades. *Complaint* ¶ 49. In most instances, the Processing Fee was $30.00, but the amount could increase to $50.00 for certain types of securities sold. *Complaint* ¶ 39 (citing the Passport Agreement). Despite this express statement of the amount of the Processing Fee, Brink alleges that the Passport Agreement should be interpreted to mean that she would pay the Processing Fee "only to the extent that Raymond James actually incurred expenses directly related to the execution and clearing of their trades." *Complaint* ¶ 50. Because, Brink alleges, the actual

4

expenses incurred by RJA for executing and clearing trades was under $5.00, charging Brink a $30.00 Processing Fee constitutes a breach of the Passport Agreement. *Complaint* ¶¶ 51-53.

The elements of a breach of contract action are (1) a valid contract, (2) a material breach, and (3) damages. Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir.1999). Where the contract "language is plain a court should not create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions." Key v. Allstate Ins. Co., 90 F.3d 1546, 1549 (11th Cir.1996); see Trowell v. S. Fin. Grp., Inc., 315 F. App'x 163, 165 (11th Cir. 2008). In fact, although this Court has an obligation to accept Brink's allegations as true at the motion to dismiss stage, that duty does not require this Court to ignore documents attached to the Complaint that expressly contradict a plaintiff's allegations. See Griffin Indus., Inc. v. Irvin, 496 F. 3d 1189, 1206 (11th Cir. 2007). When attached documents or exhibits contradict the allegations in a complaint, the exhibits govern, and the offending complaint is subject to dismissal. See id.

Furthermore, a court can construe unambiguous provisions of a contract as a matter of law. Maguire v. S. Homes of Palm Beach, L.L.C., 591 F. Supp. 2d 1263, 1267-68 (S.D. Fla. 2008) (granting motion to dismiss, in part, after construing unambiguous contract provisions as a matter of law); Sarria Holdings, Inc. v. Walgreen Co., 2003 WL 1528711, at *2-4 (S.D. Fla. Jan. 31, 2003) (granting motion to dismiss breach of contract claim after determining, as a matter of law, that plaintiff's claim conflicted with the express language of the agreement at issue). For example, in Trowell v. South Financial Group, Inc., 315 Fed. Appx. 163 (11th Cir. 2008), the Eleventh Circuit affirmed the district court's dismissal of a breach of contract claim where the plaintiff was unable to identify the specific terms of the agreement that were allegedly breached. At the trial court level, the district court rejected the plaintiff's attempt to expand the reach of his

5

compensation agreement by adding terms and obligations about tax liabilities that were not included in that agreement. Id.  On appeal, the Eleventh Circuit confirmed that "[u]nder Florida law, where the contract 'language is plain a court should not create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions.'" Id. at 165 (quoting Key v. Allstate Ins. Co., 90 F.3d 1546, 1549 (11th Cir. 1996)).

The lynchpin of Brink's argument is that she agreed to pay the Processing Fee "only to the extent that Raymond James actually incurred expenses directly related to the execution and clearing of their trades." *Complaint* ¶ 50.  The problem with her argument, however, is that the Passport Agreement contains no such provision.  In fact, Brink cannot point to any support for her argument other than a general reference of "*See* Exhibit A." *Complaint* ¶ 50.  This deficiency alone should lead to dismissal of the Complaint.  Dunkin' Donuts Franchised Restaurants LLC v. Colonial Donuts, Inc., 2007 WL 1839421, at *2 (M.D. Fla. June 26, 2007). Indeed, in a case with almost identical facts (a putative class action where the plaintiff contended that the defendant broker/dealer had charged improper fees), the court dismissed the breach of contract claim because "merely alleging that the contract as a whole was breached is not enough to state a claim." Remington v. Newbridge Sec. Corp., 2013 WL 2444719, at *3 (S.D. Fla. June 5, 2013) ("Plaintiffs' allegations in this case are . . . deficient.  Plaintiffs claim that the handling fee violated the terms of the agreements, but are unable to set forth exactly which terms were violated.").

Moreover, the Passport Agreement's express terms directly contradict Brink's offered interpretation.  The Agreement, in addition to identifying the exact amount of the Processing Fee ($30.00), provides that "[t]he actual expense incurred by RJA for any given transaction may be less than or greater than the Processing Fee." Doc. No. 1-1 at p. 3 of 15.  RJA therefore cannot

6

be held to have breached the Passport Agreement even if Brink were to prove that RJA's actual costs for executing and clearing trades was $5.00. This contradiction by the exhibit attached to the Complaint negates Brink's claim altogether such that Count I should be dismissed with prejudice. Ship Constr. and Funding Servs. v. Star Cruises, 174 F. Supp. 2d 1320, 1326 (S.D. Fla. 2001) (dismissing a breach of contract claim where "[t]he plain language of the contract negates Plaintiff's breach of contract claim").

Brink attempts to circumvent this fatal flaw by referencing, out of context, a different sentence of the Passport Agreement. Specifically, Brink relies on a statement that "Processing Fees are not commissions, but are to defray the expenses incurred in facilitating the execution and clearing of Client's portfolio transactions." *Complaint* ¶ 5 (citing Doc. No. 1-1 at p. 3). Brink reads this statement to mean that "Customers only agreed to pay for 'expenses incurred in facilitating the execution and clearing' of their trades." *Complaint* ¶ 7. But Brink's replacement of the phrase "defray the expenses" with "only agreed to pay the expenses" completely changes the wording of this sentence and, consequently, the Passport Agreement. Indeed, the very next sentence of the agreement is the one stating that "[t]he actual expense incurred by RJA for any given transaction may be less than or greater than the Processing Fee," making it eminently clear that the Processing Fee is not intended to reflect the actual costs incurred by RJA. As a result, this Court should dismiss Count I of Brink's Complaint with prejudice.

    **2.    Count II (Negligence)**

In Count II, Brink alleges that RJA owed Brink a duty of care that included a "duty of fair dealing and to act in the best interests of its Customers without regard to its own financial or other interests." *Complaint* ¶ 58. This duty of care, Brink alleges, is premised on FINRA Rule 2122, an "exchange rule," which although not providing for a private right of action in tort,

7

"set[s] forth the standards of care that are expected of broker-dealers such as RJA with regard to the imposition of fees." *Complaint* ¶¶ 59, 60.  Brink alleges that RJA breached this duty by "charging an unreasonable and excessive 'Processing Fee,' often designated as 'Misc.,' that bore no reasonable relationship to its direct and actual costs in executing and clearing Customers' transactions." *Complaint* ¶ 60.

Brink's Count II should be dismissed with prejudice for two reasons.  First, the independent tort rule bars a claim for negligence premised on conduct allegedly supporting a breach of contract.  Even though the Florida Supreme Court recently limited the economic loss rule to products liability cases, Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc., 110 So. 3d 399, 407 (Fla. 2013), "a party still must demonstrate that . . . the tort is independent of any breach of contract claim." Lamm v. State St. Bank & Trust, 749 F.3d 938, 942 (11th Cir. 2014) (citing Tiara Condo. Ass'n, Inc., 110 So. 3d at 408 (Pariente, J., concurring)).  "While the exact contours of this possible separate limitation, as applied post-Tiara, are still unclear," the standard appears to be that unless a negligence claim is premised on conduct <u>in addition to</u> the conduct underlying the breach of contract claim, the negligence claim is not an independent tort and therefore cannot stand.  Id. (citing U.S. Fire Ins. Co. v. ADT Sec. Servs., Inc., 134 So.3d 477, 480 (Fla 2nd DCA 2013).  Indeed, just last month the Southern District of Florida affirmed the logic of dismissing a negligence claim under the independent tort rule where "all of the conduct alleged by [the plaintiff] arguably relates to its performance under the [contract], and thus theoretically falls within the ambit of a breach of contract claim, thus precluding any separate cause of action for common law negligence (i.e. negligent performance of contract)."

Sur. Bank v. Dunbar Armored, Inc., No. 14-81368-CIV, 2015 WL 845590, at *6 (S.D. Fla. Feb. 25, 2015).[1]

In this case, the alleged duty of care owed to Brink by RJA arose as a result of RJA's contractual relationship with Brink. Without the contract, there could not possibly be a claim. More importantly, Brink does not allege any conduct by RJA to support her negligence claim other than the conduct supporting her breach of contract claim. In fact, the alleged breach of RJA's duty of care (paragraph 60) is the **exact same breach** Brink complains of in support of her breach of contract claim (paragraph 52):

> 60. Raymond James breached its duty, and the standard of care expected from similar professionals in the community under similar circumstances and as proscribed in FINRA Rule 2122, by charging an unreasonable and excessive "Processing Fee", often designated as "Misc.", that bore no reasonable relationship to its direct and actual costs in executing and clearing Customers' transactions.
>
> 52. Raymond James breached its Passport Agreement by charging Plaintiff (and Class Members) a "Processing Fee," often designated as "Misc.", that was not an authorized charge under the Passport Agreement and that bore no reasonable relationship Raymond James' direct and actual costs in executing and clearing the "Fee Investment" transactions (which, upon information and belief, was less than $5.00).

In both instances, Brink's complaint focuses on the amount of RJA's Processing Fee charged to Brink. It is difficult to imagine a situation where a claim for negligence is less independent than where the alleged negligent act is the precise breach of contract pled earlier in the Complaint. Consequently, this Court should dismiss Count II with prejudice under the independent tort rule.

Second, Count II should be dismissed because the regulatory rule allegedly creating the governing standard of care – FINRA Rule 2122 – did not exist at the time Brink was an RJA

---

[1] The court ultimately dismissed the negligence claim on other grounds.

customer and, more importantly, its predecessor rule did not apply to fees related to the execution of trades, such as RJA's Processing Fee.  Brink alleges that she became a customer of RJA on or about April 25, 2011, and ended her relationship with RJA or about March 21, 2012.  *Complaint* ¶ 14.  Although she does not specify all of the dates when RJA allegedly charged her a Processing Fee, Exhibit B to the Complaint – which Brink provides as a sample of an offending Processing Fee – references a trade date of December 15, 2011.  Notably, though, FINRA Rule 2122 did not become effective until November 21, 2014, when the Financial Industry Regulatory Authority, Inc. ("FINRA") filed with the Securities and Exchange Commission a proposed rule change identifying the new rule.  S.E.C. Release No. No. 34-73714, 2014 WL 6805484 (Dec. 2, 2014).  In other words, Brink attempts to rely on a rule that was not created until more than two years after she ended her relationship with RJA as evidence of the governing standard of care.  Because a standard of care cannot be established by a rule not in effect at the time of the conduct complained of, see Pic N' Save W. Florida Corp. v. Sprague, 589 So. 2d 313, 314 (Fla. 5th DCA 1991) (reversing a verdict in favor of the plaintiff where the only standard of care that the plaintiff attempted to introduce was building standard not applicable to the building at issue in the case), Count II is deficient.

But more importantly, the rule governing charges for services performed by FINRA members that was in effect between April 2011 and March 2012 – Rule 2430 – expressly does not apply to fees "related to the execution of trades," such as RJA's Processing Fee.  In February 2011, when FINRA commenced its efforts to revise and renumber various of its rules, it issued a Notice to Members requesting comment on its proposed consolidated rules governing markups, commissions, and fees.  FINRA Notice 11-08, 2011 WL 539108 (Feb. 10, 2011).  With regard to Rule 2430, entitled "Charges and Fees for Services Performed," FINRA proposed the following:

10

> FINRA proposes to transfer NASD Rule 2430, with a significant change, to the Consolidated FINRA Rulebook as FINRA Rule 2123. Proposed FINRA Rule 2123(a) restates the current requirement that charges and fees for services must be reasonable and not unfairly discriminate among customers and, like NASD Rule 2430, applies to all charges and fees for services provided by a member **that are not related to the execution of a transaction**.

Id. at *8 (emphasis added).[2]  And two years later, as FINRA was winding up its comment process and proceeding to finalize implementation of the new rule, it again confirmed that the scope of Rule 2430 did not apply to fees related to the execution of trades:

> C. Charges and Fees for Services Performed (Proposed FINRA Rule 2123)
>
>> NASD Rule 2430 requires that charges and fees for services must be reasonable and not unfairly discriminate among customers, and it applies to all charges and fees for services provided by a member firm **that are not related to the execution of a transaction**.

FINRA Regulatory Notice 13-07, 2013 WL 414651 (Jan. 31, 2013) (emphasis added).

FINRA's express statement that its Rule 2430 did not apply, and would continue to not apply, to fees that are related to the execution of a transaction is a fatal blow to Brink's negligence claim. Brink repeatedly alleges and acknowledges in her Complaint that the Processing Fee is a fee related to the execution of transactions:

> 1. This lawsuit is brought as a class action by and on behalf of Raymond James' Customers that were charged an unauthorized and unreasonable "Processing Fee," sometimes labelled as a "Misc. Fee," by Raymond James when it executed trades for these Customers in their "Passport Investment Account Program" (hereinafter the "Passport Account") . . .
>
> 4. Customers who created a Passport Account were required to sign a "Passport Non-Discretionary Client Agreement" ("Passport Agreement"), and through this Passport Agreement, also agreed to pay Raymond James "for transaction execution and clearing services a flat fee per transaction…hereinafter referred

---

[2] The Rule was ultimately numbered FINRA Rule 2122, not Rule 2123, and the proposed "significant change" – requiring members to establish and make available to retail customers the member's schedule(s) of standard charges and fees for services for retail customers – was ultimately not adopted in the final rule. These facts, however, are not relevant for purposes of this motion.

11

to as a 'Processing Fee'." (emphasis added). (See p.1, Passport Agreement, Exhibit "A.").

5. The Passport Agreement makes clear that "Processing Fees are not commissions, but are to defray the expenses incurred in facilitating the execution and clearing of Client's portfolio transactions." (emphasis added) (*See* p.2, Passport Agreement, Exhibit "A."). Thus, Processing Fees were defined by Raymond James as a fee to reimburse Raymond James for the execution and clearing of trades, and not as a fee that constituted a commission in a commission free account, or other remuneration to Raymond James

6. . . . Upon information and belief, the cost to Raymond James for executing and clearing trades was no more than $5.00. Therefore, the Processing Fee charged by Raymond James contained up to a 1000% mark-up for profit in some instances (and a significant mark-up in all instances), and as such, was transaction based remuneration to Raymond James – an unauthorized commission in an account that is supposed to be commission free

9. . . . By charging a Processing Fee far in excess of the actual "expenses incurred in facilitating the execution and clearing" of the trade, Raymond James has breached its duty to its Customers and committed negligence

23. Pursuant to Rule 23(b)(3), there are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class Members, including whether Raymond James: a. Charged a "Processing Fee" or "Misc. Fee" that exceeded its direct and actual costs in executing and clearing (i.e. processing) Class Members' transactions;

41. In sum, Customers who signed the Passport Agreement agreed to: (1) pay, in lieu of commissions, an Advisory Fee on a quarterly basis based on a percentage of the account's "Fee Investments" overall value; and (2) pay a "Processing Fee" only to the extent necessary to reimburse Raymond James for the actual costs of executing and clearing transactions. Correspondently, Raymond James agreed to: (1) accept as payment for its services an Advisory Fee based on a percentage of the total value of the Customer's account's "Fee Investments," "in lieu of" being paid any transaction based commission or remuneration; and (2) only charge Customers a fee in the amount necessary to reimburse it for any costs or expenses actually incurred, and directly related to, the execution and clearing of a Customer's transactions.

45. Therefore, under both the spirit and express terms of the Passport Agreement *and* under the common law standard of care owed by Raymond James to its Customers, Raymond James could not charge a "Processing Fee" that

12

exceeded its direct and actual costs in executing and clearing Customers' transactions.

Because the Processing Fee relates to the execution and clearing of trades, it is specifically exempted from the scope of FINRA Rule 2430. See Remington v. Newbridge Securities Corporation, 2013 WL 4496504, at *4 (S.D. Fla. Aug. 20, 2013) (quoting the relevant language from FINRA Regulatory Notice 13-07 and emphasizing that the scope of FINRA Rule 2430 applies to charges and fees for services provided "*that are not related to the execution of a transaction*"). Because FINRA specifically exempts RJA's Processing Fee from the scope of its Rule 2430, Brink's alleged standard of care is inapplicable. Count II should be dismissed with prejudice.[3]

## ALTERNATIVE MOTION TO STRIKE AND FOR MORE DEFINITE STATEMENT

In the event this Court does not dismiss Brink's Complaint, it should strike portions of the Complaint and require Brink to make a more definite statement. Applicable to both of these requests is the requirement of Federal Rule of Civil Procedure 8 that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation ... be simple, concise, and direct."

Pursuant to Federal Rule of Civil Procedure 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike will "usually be denied unless the allegations have no possible

---

[3] It is worth noting that even if Rule 2430 were somehow applicable, it does not provide that fees must be tied to a broker's actual costs; the rule merely requires that the fee be "reasonable" and "not unfairly discriminatory." In the only published opinion discussing the interpretation of this Rule 2430, the Southern District of Florida noted that a broker potentially ran afoul of Rule 2430 by charging two customers different amounts for a handling fee – $49.95 in one case and $39.95 in the other case – for no apparent reason. Remington, 2013 WL 4496504, at *5. Significantly, even though the plaintiff in that case had argued that the broker also violated the rule because its handling fees far exceeded the broker's actual costs in handling a transaction (estimated at between $8.00 and $10.50), the court ignored that argument.

13

relation to the controversy and may cause prejudice to one of the parties." Story v. Sunshine Foliage World, Inc., 120 F.Supp.2d 1027, 1030 (M.D. Fla. 2000); Harty v. SRA/Palm Trails Plaza, LLC, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010).

Paragraphs 28-31 and 44, as well as Exhibits B, C, and D of Brink's Complaint, should be stricken because they contain immaterial matter that may prejudice RJA. The subject allegations and exhibits refer to (i) a FINRA news release publicizing sanctions against five broker/dealers for charging improper "handling fees" (Doc. No. 1-2), (ii) a letter sent by FINRA referencing the sanctions (Doc. No. 1-3), and (iii) a Letter of Acceptance relating to a fine paid by another broker/dealer relating to handling fees (Doc. No. 1-2).

As an initial matter, the fact that other brokers or dealers have been sanctioned by FINRA for charging allegedly excessive handling fees is irrelevant to Brink's breach of contract claim. The FINRA documents do not describe, let alone provide copies of, the broker/dealer contracts at issue in those cases. It is therefore unknown how those contracts compare to Brink's Passport Agreement, including, most importantly, whether the brokers/dealers disclosed in their customer agreements the precise amount of the handling fees that were being charged, as RJA did in its Passport Agreement with respect to the Processing Fee. Moreover, the claims in the FINRA cases involved allegedly excessive handling fees, not processing fees relating to the execution of trades.

The subject allegations and documents are also irrelevant to Brink's negligence claim. Brink uses these documents to define a "common law standard of care" owed by RJA to its customers. *Complaint* ¶ 45. But at best, it is FINRA Rule 2430 that defines the standard of care, not press releases discussing firms that have been sanctioned for allegedly violating Rule 2122. To the extent Brink desires to describe FINRA's rules regarding fees, she could simply refer to

14

and/or attach copies of the applicable rule(s). Moreover, in each case referenced in the documents, the broker/dealer "neither admitted nor denied the charges" levied by FINRA, and the fees were not Processing Fees relating to the execution or clearing of trades. Whether other brokers/dealers have been fined by FINRA, particularly where the brokers/dealers did not admit to the charges, is irrelevant to establishing the applicable governing rule and to this case more generally. And because the fees at issue in those cases were for handling and postage charges – and not fees for executing and clearing trades – their relevance is even more questionable. Permitting their inclusion in this case would prejudice RJA because of the implied connection between the conduct at issue in those cases and RJA's conduct, even though there is none.

RJA also moves for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) because portions of Brink's Complaint are "so vague or ambiguous that [RJA] cannot reasonably be required to frame a responsive pleading." In ruling on a motion for more definite statement, the Court should be mindful of the liberal pleading requirements of the Federal Rules of Civil Procedure, pursuant to which a "short and plain statement of the claim" will suffice. Betancourt v. Marine Cargo Mgmt., Inc., 930 F. Supp. 606, 608 (S.D. Fla. 1996).

As an initial matter, Brink's Complaint fails to allege which particular provision(s) of the Passport Agreement RJA has allegedly breached. So that RJA can properly frame a response to Brink's Count I, Brink should be ordered to clarify her breach of contract allegations.

In addition, Count I is insufficiently definite regarding the specific fee that Brink contends is improper and whether that fee was ever charged to Brink (and, if so, when and how many times). Brink's Complaint, of course, is focused on RJA's "Processing Fee." Brink alleges that RJA "often" or "sometimes" labeled the Processing Fee as a "Misc. Fee." *Complaint* ¶¶ 1, 22, 49, 52, 57, 60. Brink further alleges that RJA charged her "a 'Processing Fee'

(designated as 'Misc.') as high as $30.00 when trading 'Fee Investments,' despite the fact that Raymond James' direct and actual cost in executing and clearing her transaction was under $5.00." *Complaint* ¶ 52. To support her allegations, Brink attaches a transaction summary to her Complaint as Exhibit F. According to that transaction summary, Brink was charged three fees for a trade executed in December 2011: a "Fee" of $0.24, a "Misc. Fee" of $30.00, and a "Processing Fee" of $4.95.

The initial confusion in Brink's Complaint comes from the fact that the "Processing Fee" charged on Exhibit F was only $4.95, which would seemingly undermine Brink's contention that RJA charged her Processing Fees unrelated to RJA's actual incurred cost of less than $5.00. Although this might be able to be resolved by alleging that the offending Processing Fee in Exhibit F is labeled as "Misc.," Brink does not, in fact, make this allegation. Reading the Complaint – and paragraph 52 in particular – carefully, Brink merely alleges that (1) RJA charged her a Processing Fee "as high as" $30.00; (2) RJA "often" or "sometimes" designated its Processing Fee as a "Misc. Fee"; and (3) a copy of a trade confirmation from December 2011 showing a $30.00 "Misc." fee is attached to the Complaint as Exhibit F. Notably, Brink does <u>not</u> allege that in the particular case of the December 2011 trade summarized in Exhibit F, RJA labeled the Processing Fee as a "Misc. Fee." It is therefore unclear which fee on the trade confirmation that Brink is complaining about. This confusion is exacerbated by Brink's contention that RJA charged her a "Processing Fee (designated as 'Misc.') **as high as** $30.00." *Complaint* ¶ 52 (emphasis added). If RJA charged Processing Fees less than $30.00 (which the language "as high as" necessarily means), then the "Processing Fee" related to the December 2011 trade could be the $0.24 Fee, the $30.00 Misc. Fee, or the $4.95 Processing Fee – or

16

perhaps not even reflected on the transaction summary at all.  It is essential that Brink clarify these allegations.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on March  19th , 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Lyle E. Shapiro, Esq.
Eric M. Sodhi, Esq.
Joshua L. Spoont, Esq.
Sara E. Hanley, Esq.
Randall C. Place, Esq.
Darren C. Blum, Esq.

**BUCHANAN INGERSOLL & ROONEY PC**

By:/s/ G. Calvin Hayes
Samuel W. Braver
Florida Bar No. 0539074
samuel.braver@bipc.com
G. Calvin Hayes
Florida Bar No. 558702
calvin.hayes@bipc.com
401 E. Jackson St., Suite 2400
Tampa, FL 33602
Tel:  (813) 222-8180
Fax:  (813) 222-8189

Counsel for Raymond James & Associates, Inc.

Raymond JamesBrink - Motion to Dismiss Complaint.03.18.15 (3).DOCX