UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-60334-CIV-DIMITROULEAS/SNOW

JYLL BRINK, on her own behalf,
and on behalf of those similarly situated,

      Plaintiff,

v.

RAYMOND JAMES & ASSOCIATES, INC.,          **CLASS ACTION**

      Defendant.
_____/

### **PLAINTIFF'S MOTION TO COMPEL**

Plaintiff, Jyll Brink, through undersigned counsel and pursuant to the Court's Discovery Order (D.E. 18), moves for an order: (i) overruling the various unsubstantiated objections contained in Defendant Raymond James & Associates, Inc.'s ("RJA") Responses to Plaintiff's First Set of Interrogatories ("ROGS") and First Request for Production ("RFP") (collectively, the "Discovery Requests"), and (ii) compelling RJA to provide better answers to certain Interrogatories.[1]

RJA's responses to the Discovery Requests, attached hereto, include a host of improper objections or insufficient responses which fall into the following four categories: (1) relevance objection, seeking to avoid discovery relating to RJA's sister companies' or affiliates' participation in the Passport Account at issue; (2) relevance objection, seeking to avoid discovery relating to fees under the Passport Account at issue other than "Processing Fees"; (3) promising a "Rolling Production" with no certain end-date; and (4) miscellaneous objections.[2]  Additionally, RJA's responses to some Interrogatories are vague, ambiguous and incomplete.

---

[1]    Plaintiff served the Discovery Requests on Defendant on April 23, 2015, and Defendant served its responses on May 29, 2015.

[2]    The parties are presently attempting to come to an agreement on the identity of custodians and search terms with regard to ESI.  Thus, it is premature to address, at this point and through this Motion, Defendant's "overly burdensome" objections with respect to ESI. Nonetheless, the Court's ruling on the issues raised in this Motion will delineate the parameters of all discovery, including ESI.

I.  Category 1: "Affiliate" Issue
    (**ROGS:** 3, 4, 6-9, 11, 12, 14, 16;   **RFP:** 1, 2, 4, 11, 14, 15, 19, 20, 23-29, 32-34)

This case is about RJA charging Passport customers an improper (and substantially inflated) "Processing Fee," sometimes referred to as a "Misc. Fee."  And while RJA has its own direct customers—i.e. those customers who sign a Passport Agreement with RJA, RJA's affiliates also have customers with Passport Agreements and Passport Accounts—many, if not all, of whom have also been charged this improper "Processing Fee," most likely by RJA. These affiliates, presumably through agreements with RJA, use RJA to execute and clear transactions in these Passport accounts, and oftentimes assign RJA as the "custodian" or "administrator" of these Passport accounts.  Accordingly, documentation and information exists that was generated by both RJA and its affiliate companies (and likely shared among all of these Raymond James affiliated entities) relating to these Passport Accounts.  Such documentation and information, including but not limited to information and documentation relating to representations regarding the Passport Accounts and the cost of administering the Passport Accounts, are reasonably calculated to lead to the discovery of admissible evidence and are thus discoverable.

RJA, the Defendant in this case, along with Raymond James Financial Services Advisors, Inc. ("RJFSA") and Raymond James Financial Services, Inc. ("RJFS") are wholly owned subsidiaries of Raymond James Financial, Inc. ("RJF").  According to RJFSA's Firm Brochure from December of 2011, "[t]he primary affiliation of RJFSA, through its holding company [RJF] is with [RJFS], member FINRA/SIPC…a broker-dealer…."  (*See* Exhibit "E," to the Complaint, D.E. # 1-5, at p. 4 of 34).  The Firm Brochure continues: "Another important affiliation of RJFSA, [again, through RJF] is with [RJA], a broker-dealer and member of the New York Stock Exchange….RJA serves as the custodian for RJFSA client accounts, acts as the clearing agent, and facilitates various advisory programs."  *Id*.  Thus, while RJFSA is a "federally registered investment advisor," it is not a broker-dealer, and therefore, all of its trading must be done through its affiliates such as RJA—a concept fully disclosed in the Firm Brochure. Indeed, when describing the Passport account, the Firm Brochure clearly explains: "The Passport Account is a fee-based account offered by RJFSA **and administered by affiliated advisor [RJA].**"  *Id*. at 5 of 34. (Emphasis added).  The Firm Brochure also suggests that RJA acts as the "clearing firm" for RJFSA, "and to the extent recommendations are implemented through any of our affiliates, it should be noted that compensation will contribute to the overall profitability of

the holding company, RJF." *Id*. at 16 of 34.  This concept is repeated in the Firm Brochure.  *Id*. at 25 of 34.

The Passport Agreements themselves further evidence how these "affiliates" work together in connection with the Passport Accounts.  For example, the Passport Agreement utilized by RJFSA appoints RJFS "as sole and exclusive broker with respect to the Account," and RJA "as the clearing agent in the execution of said transactions." .  Moreover, although the agreement is between RJFSA and its customer, and all trades are cleared by RJA, the "Processing Fee" is paid to RJFS.  Similarly, a Passport Agreement made with RJFS provides: "[RJA] acts as the clearing agent in the execution of said transaction."  Because of the close interrelationship between all of these entities and their joint participation in the Passport Account program, including RJA's involvement in acting as "custodian" and "administrator" for all Passport Accounts, and being the party responsible for "execution and clearing" of transactions in all Passport Accounts, RJA's objection as to relevance should be overruled.  Among other things, Plaintiff is entitled to see the entire scope of RJA's participation, including its administration of all Passport Accounts, including the dollar amounts that it collected from customers, dollar amounts it incurred in performing its work, and the representations made to all customers with regard to the Passport Accounts.

## II. Category 2: Fees other than "Processing Fees"
**(ROGS:** 12**;   RFP:** 1, 5, 6, 9, 10, 26, 34**)**

RJA also objects to the production of documents or information relating to fees charged by Raymond James under the Passport Agreement, other than "Processing Fees."  Plaintiff's request for information and documents relating to fees, including representations relating to fees, is narrowly tailored to only ask for information and documents relating to fees associated with the Passport Agreement and Passport Accounts.  Plaintiff is not requesting information from RJA relating to fees associated with other agreements or accounts.  In order for Plaintiff to have a full and appropriate understanding of the fees, costs and administration of the Passport Accounts administered by Raymond James, Plaintiff is entitled to the requested information.

## III. Category 3: Rolling Production.
**(RFP**: 1-35**)**

While it is true that Plaintiff is amenable to a "rolling production," Plaintiff also conditioned that procedure upon RJA providing an end-date to the rolling production – a date by which Plaintiff can be assured all responsive documents have been produced.  Plaintiff's position

is that an end-date must be established because the deadline for class fact discovery of September 1, 2015 is quickly approaching.  Plaintiff submits it should occur sometime prior to July 20, 2015 to allow time for the depositions on class certification issues to take place and for the expert witness deadlines to be met.  RJA should be ordered to produce all responsive documents by a date certain, no later than July 20, 2015.

### IV.     Category 4: Miscellaneous Objections.

RJA also made the following untenable objections, which should be overruled:

- Objecting to information outside of the class period as "overly broad" and not relevant (*See* RFP 3 and 31).  It is likely that documents exist outside of the class period which discuss relevant items such as the formation of the language used in the Passport Agreements in force *during* the class period.  Indeed, based on the documents produced by RJA thus far, it appears that much of the Processing Fee language contained in the Passport Agreement was unchanged during the class period and was therefore first decided upon and drafted prior to the class period. Obviously, such information and documents are reasonably calculated to lead to the discovery of admissible evidence;

- Objecting to producing documents which refer or relate to NASD Rule 2440 and its successor, FINRA Rule 2121 as not relevant (*See* RFP 6 and 10).  Documents referring or relating to these rules are discoverable because these require that RJA to expressly and precisely disclose all commissions to its customers, and Plaintiff has alleged that RJA's charging of a Processing Fee in excess of the actual costs associated with execution and clearing of a trade was really a disguised commission (*See* D.E. # 1, at ¶ 42).

### V.     Vague and Ambiguous Responses
###        (ROGS: 5, 6, 7)

RJA has also made vague and ambiguous responses to key interrogatories.  When asked the simple question of how it calculated the amount to charge customers as a Processing Fee, RJA's response is that the Processing Fee "is based on a reasonable estimate of costs, while at the same time taking into consideration competitive market pricing."  (*See* RJA's answer to Interrog. 6).  In order for the answer to have any meaning whatsoever, the answer should have included what the reasonable estimates were, what the actual costs were, how estimated and actual costs were determined, why the Processing Fee amount changed over time, and why competitive market pricing was relevant and how it factored into the equation.  To further add to

the ambiguity, when asked to identify what the "actual expense incurred by RJA for any given transaction," a phrase lifted directly from the Passport Agreement, RJA claims it "does not specifically track the expenses and costs attributable to executing and clearing transactions." (*See* RJA's answer to Interrog. 7).  It begs the question: if Raymond James does not track its actual expenses of "executing and clearing" a customer's transaction, how can it even begin to determine the "reasonable estimate of costs"?  Interrogatories 6 and 7 should be answered clearly and in detail so that Plaintiff has complete answers to these simple but critical questions.[3]

Dated: June 23, 2015

Respectfully submitted,

By: ___*s/ Lyle E. Shapiro*___
Lyle E. Shapiro (FBN: 0120324)
lshapiro@richmangreer.com
Eric M. Sodhi (FBN: 0583871)
esodhi@richmangreer.com
Joshua L. Spoont (FBN: 053263)
jspoont@richmangreer.com
RICHMAN GREER, P.A.
396 Alhambra Circle
North Tower, 14th Floor
Miami, Florida 33134
Tel/Fax: (305) 373-4000 / (305) 373-4099

Randall C. Place (FBN: 229090)
randall_place@placeandhanley.com
Sara Hanley (FBN: 107508)
Sara_hanley@placeandhanley.com
PLACE AND HANLEY LLC
1415 Panther Lane, Ste. 207
Naples, FL 34109
Tel/Fax: (239) 455-1242 / (888) 876-6450

Darren Blum (FBN: 87173)
blum@stockattorneys.com
110 E. Broward Blvd., Suite 1700
Fort Lauderdale, FL 33301
Tel/Fax: (954) 255-8181 / (954) 206-1717

*Attorneys for Jyll Brink, on her own behalf and on behalf of those similarly situated.*

---

[3]    Clear and complete answers to these Interrogatories will also permit Plaintiff to be more focused while taking depositions for class certification.

## CERTIFICATE OF SERVICE AND MEET AND CONFER

**WE HEREBY CERTIFY** that on June 23, 2015, we served the foregoing document on all counsel of record or pro se parties identified on the service list below in the manner specified.

**WE FURTHER CERTIFY** that we have conferred on numerous occasions with counsel for Defendant to engage in genuine efforts to resolve the discovery disputes raised herein before filing this motion, including three telephone conferences, numerous e-mails and by providing counsel for Defendant a draft of this motion before filing it.

By: _s/ Lyle E. Shapiro_
Lyle E. Shapiro

## SERVICE LIST

Lyle E. Shapiro, Esq.
Eric M. Sodhi, Esq.
Joshua L. Spoont, Esq.
Richman Greer, P.A.
396 Alhambra Cir., North Tower, 14th Fl.
Miami, FL 33134
lshapiro@richmangreer.com
esodhi@richmangreer.com
jspoont@richmangreer.com
*Attorneys for Plaintiff*

Randall C. Place, Esq.
Sara E. Hanley, Esq.
Place and Hanley, PLLC
1415 Panther Lane
Naples, FL 34109
randall_place@placeandhanley.com
sara_hanley@placeandhanley.com
*Attorneys for Plaintiff*

Darren Blum, Esq.
Blum Law Group
110 E. Broward Blvd.
Suite 1700
Ft. Lauderdale, FL 33301
blum@stockattorneys.com
*Attorneys for Plaintiff*

Samuel W. Braver, Esq.
G. Calvin Hayes, Esq.
Buchanan Ingersoll & Rooney PC
401 E. Jackson St., Suite 2400
Tampa, FL 33602
braversw@bipc.com
calvin.hayes@bipc.com
*Attorneys for Defendant*