## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

### CASE NO.: 15-60334-CIV-DIMITROULEAS/SNOW

JYLL BRINK, on her own behalf,
and on behalf of those similarly situated,

      Plaintiff,

v.

                                       **CLASS ACTION**

RAYMOND JAMES & ASSOCIATES, INC.,

      Defendant.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DE 51]

Plaintiff, Jyll Brink ("Brink" or "Plaintiff"), through undersigned counsel, files this response in opposition to Defendant Raymond James & Associates, Inc.'s ("RJA") Motion for Summary Judgment and Incorporated Memorandum of Law [DE 51] (the "MSJ").

Contemporaneously with this response, Plaintiff has filed a separate Statement of Material Facts in Opposition to RJA's Motion for Summary Judgment, which is cited to herein as "Brink-SOF."  RJA's statement of facts is cited to herein as "RJA-SOF."

**I.**      <u>**Introduction**</u>

As this Court has aptly summarized it [DE 27 at 2]:

> The crux of Plaintiff's Complaint is that the putative Class Members were wrongfully charged a *de facto* commission masquerading as a "Processing Fee" on certain trades executed through their RJA Passport Account – which, in RJA's own words, is "an asset-based fee account program where [Class Members] pay an annual Advisory Fee . . . based on the level of assets in [their] Account . . . rather than [on] transactions."

Plaintiff has brought two claims: breach of contract (Count I) and negligence (Count II).  RJA now moves for summary judgment on both, but in doing so it mischaracterizes Plaintiff's claims and the law applicable to them, ignores material facts, and fails to acknowledge the facts in the

light most favorable to Plaintiff, as it must.  *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368-69 (11th Cir. 1982) (all facts and the inferences therefrom must be viewed in the light most favorable to the non-movant).

RJA's argument on summary judgment is two-fold.  First, it claims that the voluntary payment doctrine bars Plaintiff's breach of contract claim (Count I) because she "voluntarily, and without protest, paid RJA the Processing Fee at issue."  *See* MSJ at 1.  The voluntary payment doctrine only applies, however, when the payor has "full knowledge of all the facts," *Jefferson Co. v. Hawkins*, 2 So. 362, 365 (Fla. 1887),[1] and as explained below, neither Plaintiff nor any Class Member could have had knowledge, let alone "full knowledge," of the fact that the Processing Fee was a hidden commission in violation of the express terms of the parties' Passport Agreement.  In the same vein, Fla. Stat. § 725.04 – which curtailed the voluntary payment doctrine – precludes RJA from raising the defense because the Passport Agreement prohibited RJA from charging a *de facto* commission as a "Processing Fee," as this Court previously recognized [DE 27 at 5].

Second, RJA argues that Plaintiff's negligence claim (Count II) fails because it "is actually a claim under a private exchange rule that does not grant a private right of action."  *See* MSJ at 1.  In support, RJA relies on case law outside the Eleventh Circuit for the proposition that a party may not bring a private lawsuit under NASD and FINRA rules, but that is not what Plaintiff has done.  While Plaintiff's negligence claim cites to RJA's violation of NASD and FINRA rules as *evidence* of RJA's negligence, the common law standards of care that RJA breached exist on their own, independent of these rules.  *See Remington v. Newbridge Sec. Corp.*, 13-60384-CIV, 2013 WL 2444719, at *6 (S.D. Fla. 2013) (Cohn, J.) (rejecting an argument identical to RJA's here, and permitting the plaintiff to bring a negligence claim which proffered the defendant's violation of NASD rules as evidence of such negligence).

When viewing the material facts in the light most favorable to Plaintiff, the Court should conclude that (1) the parties' Passport Agreement contractually prohibited RJA from charging a *de facto* commission in the commission-free Passport Account; (2) RJA's Processing Fee constituted an undisclosed commission; and (3) by charging it, RJA breached its common law duties in accordance with the standard of care employed by other professional broker-dealers.

---

[1] According to RJA, the *Jefferson Co.* case is the "seminal voluntary payment case" in Florida. MSJ at 4.

These facts establish the evidence upon which the jury could (and ultimately should) find in favor of Plaintiff on both counts.  *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003) (on summary judgment, "the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party.")  The Court should deny RJA's MSJ.

## II.     The Material Facts

Throughout the Class Period, RJA collected ███████████████ in revenue[2] by wrongfully charging Plaintiff and the Class a *de facto* commission masquerading as a "Processing Fee" when it executed and cleared transactions through their Passport Accounts – a purportedly commission-free account which, in RJA's own words, is "an asset-based fee account program where [Class Members] pay an annual Advisory Fee . . . based on the level of assets in [their] Account . . . rather than [on] transactions."[3]  RJA promotes the Passport Account to customers who might prefer to compensate RJA as a percentage of assets under management, "in lieu of a commission for each transaction."[4]

Plaintiff held a Passport Account from April 25, 2011 until March 21, 2012,[5] and like all Class Members, she was required to sign RJA's Passport Agreement.[6]  In addition to agreeing to the advisory fee, Plaintiff agreed in the Passport Agreement to pay a Processing Fee, which is described as "flat fee per transaction" that is necessary to cover "transaction execution and clearing services" associated with trades of certain securities such as stocks and mutual funds.[7] As explained by Plaintiff's expert, Gene Carasick, "[e]xecution and clearing costs consists of the costs of executing the customer's order, that is, finding the other side of the order, and performing the back office functions necessary to settle the transaction."[8] ███████████

---

[2] Brink-SOF at ¶ 19.

[3] Brink-SOF at ¶ 20.  RJA actually cautions customers "to consider whether it would be better for [them] to pay separately for each trade" before deciding on the commission-free Passport Account.  [DE 1-1 at 5].

[4] [DE 1-5, Raymond James Firm Brochure, at 4].

[5] Brink-SOF at ¶ 21.

[6] Brink-SOF at ¶ 22.

[7] *See* [DE 1-1, Brink's Passport Account Agreement at p. 2 of 15 (last paragraph) and p. 3 of 15 (in the "Schedule of Charges for Execution and Clearing of Transactions in Passport Fee Investments")].

[8] Brink-SOF at ¶ 23.



At the start of the Class Period, RJA charged a Processing Fee that ranged from $30.00 to $50.00 per trade, depending on the type of security involved.[10] From and after April 2, 2012, the Processing Fee ranged from $9.95 to $30.00 per trade.[11]

The Passport Agreement contains a "Schedule of Charges" for the Processing Fee, which is coupled with the following representation by RJA:

> Processing Fees are **not** commissions, but are to defray the expenses incurred in facilitating the execution and clearing of Client's portfolio transactions. The actual expense incurred by RJA for any given transaction may be less than or greater than the Processing Fee.[12]

---

[9] Brink-SOF at ¶ 24.

[10] Brink-SOF at ¶ 25.

[11] Brink-SOF at ¶ 25.

[12] Brink-SOF at ¶ 26 (emphasis added).

[13] Brink-SOF at ¶ 27.

[14] Brink-SOF at ¶ 27.

RICHMAN GREER, P.A.
Miami • West Palm Beach



In reality the Processing Fee bore no relation to RJA's actual costs to execute and clear a trade.

The Processing Fee was really just a means to generate additional profit for the firm,

---

[15] Brink-SOF at ¶ 28.

[16] Brink-SOF at ¶ 29.

[17] Brink-SOF at ¶ 30.

[18] Brink-SOF at ¶ 31.

[19] Brink-SOF at ¶ 32.

[20] Brink-SOF at ¶ 32.



---

<sup>21</sup> Brink-SOF at ¶ 33.

<sup>22</sup> Brink-SOF at ¶ 33.

<sup>23</sup> Brink-SOF at ¶ 34.

<sup>24</sup> Brink-SOF at ¶ 35.

<sup>25</sup> Brink-SOF at ¶ 36.

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
█████████████████████████████

      This Court previously "determine[d]" from its own review of the Passport Agreement that "RJA was contractually prohibited from charging a *de facto* per transaction commission to customers who specifically opted to trade in RJA's commission-free Passport Account."[27]  It is perhaps unsurprising then, that a few months after the Court made that determination, ████

██████████████████████████████████████████████████████████████
██████████████████████████  ████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████

    ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████

---

[26] Brink-SOF at ¶ 37.

[27] *See* [DE 27 at pp. 5-6 (June 29, 2015 Order denying RJA's motion to dismiss)].

[28] Brink-SOF at ¶ 38.

[29] Brink-SOF at ¶ 39.

[30] Brink-SOF at ¶ 40.

RICHMAN GREER, P.A.
Miami • West Palm Beach

RJA charged Plaintiff a $30.00 Processing Fee at least eight times.[31] 

Yet that is precisely what the Processing Fee was: an undisclosed commission.

## III.   Argument

In view of the facts of this case, and especially in light of the inferences favorable to Plaintiff that can and must be drawn from the facts, coupled with the inapplicability of the legal arguments that RJA advances in its motion, summary judgment should be denied.

### A.  Summary judgment is inappropriate on Plaintiff's claim for breach of contract

#### 1.     The voluntary payment doctrine is inapplicable

RJA's first argument is that Plaintiff's claim for breach of contract is barred by the voluntary payment doctrine.  That doctrine provides that "where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot

---

[31] RJA-SOF at ¶ 15.

[32] Brink-SOF at ¶ 43.

[33] Brink-SOF at ¶ 43.

[34] 

[35] Brink-SOF at ¶ 41.

[36]

[37] Brink-SOF at ¶ 42.

be recovered." *Ruiz v. Brink's Home Sec., Inc.*, 777 So. 2d 1062, 1064 (Fla. 2d DCA 2001).  In order for a payment to be considered voluntary, the payor must have had "full knowledge of all the facts" in making payment.   *Jefferson Co.*, 2 So. at 365.  "The voluntary payment doctrine requires the party asserting it to show that the person who made the payment had **full knowledge of the relevant facts**, **including allegedly wrongful conduct**." *Carrero v. LVNV Funding, LLC*, 11-62439-CIV, 2014 WL 6433214, at *6 (S.D. Fla. 2014) (emphasis added).[38]  Once a payment is made with full knowledge of the facts, it can only be undone if it was attended by "some compulsion or coercion … which controls the conduct of the party ... as will render payment involuntary." *Jefferson Co.*, 2 So. at 365.   In other words, if "the potential consequences of non-payment are sufficiently severe so as to leave little or no choice but to tender payment," then it is considered involuntary.  *City of Key West v. Florida Keys Community College*, 81 So. 3d 494, 500-01 (Fla. 3d DCA 2012) (collecting cases).

RJA asserts the doctrine applies here because "Plaintiff knowingly, voluntarily, and without protest chose to pay Processing Fees for applicable trades pursuant to the Passport Agreement she executed with RJA."  *See* MSJ at 2.  In other words, because the Passport Agreement contains a schedule of fees setting forth the Processing Fee amounts, and because Plaintiff's trade confirmations and account statements reflected those charges, RJA asserts that Plaintiff was obliged to protest the Processing Fee *before* RJA automatically deducted the charges from her account.  *See id.* at 1-3.

The problem with RJA's argument is that Plaintiff did not pay the Processing Fees with full knowledge of the facts. █████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[38]  The "voluntary payment" cases that RJA cites in its MSJ recognize the knowledge requirement; yet RJA completely ignores that critical language.  *See e.g.*, *Hassen v. Mediaone of Greater Florida, Inc.*, 751 So. 2d 1289, 1290 (Fla. 1st DCA 2000) ("…as long as payment is made with knowledge of the factual circumstances"); *Jefferson Co v. Hawkins*, 2 So. 362, 365 (Fla. 1887) ("… with full knowledge of all the facts …"); *City of Miami v. Keton*, 115 So. 2d 547, 551 (Fla. 1959) ("… with knowledge of the facts …"); *Sanchez v. Time Warner*, Inc., 98-211-CIV-T-26A, 1998 WL 834345, *2 (M.D. Fla. 1998) (same); *City of Key West v. Florida Keys Community College*, 81 So. 3d 494, 500 (Fla. 3d DCA 2012) ("… with full knowledge of all the facts . . ."); *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653, 657 n. 7 (same).

RICHMAN GREER, P.A.
Miami • West Palm Beach

■■■■■■■■   Thus, it is irrelevant that there was no "illegality, coercion, compulsion, imposition or duress," as RJA points out, *see* MSJ at 5, because Plaintiff's payments were not "voluntary" in the first place. *See Carrero* and *Jefferson Co.*, *supra* (requiring "full knowledge" of the facts for a payment to be considered "voluntary").   In reality, there was no way for Brink (or any of the other Class Members) to have full knowledge of the fact that the Processing Fee was really a *de facto* commission in violation of the Passport Agreement, ■■■■■■■■



Fundamentally, RJA misses the point here.  Plaintiff's claim for breach of contract is not founded on some notion that she struck a bad deal, paid the Processing Fees, and now has buyer's remorse.  It is premised on the fact that the Passport Agreement itself, by its very terms, precluded RJA from charging Plaintiff an undisclosed commission masquerading as a Processing Fee.   When this Court "constru[ed] the [Passport Agreement] as a whole," it correctly "determine[d] that RJA was **contractually prohibited** from charging a de facto per-transaction commission to customers who specifically opted to trade in RJA's commission-free Passport Accounts."[43]   And therein lies the most critical issue of material fact in this case: whether RJA's Processing Fee was really an undisclosed commission in direct violation of RJA's contractual agreement and representation that "Processing Fees are not commissions."[44]

---

[39] Brink-SOF at ¶ 43.
[40] Brink-SOF at ¶¶ 29-30.
[41] Brink-SOF at ¶ 37.
[42] ■■■■■■■■
■■■■■■■■ [DE 27 at 5-6 (emphasis added)].
[44] ■■■■■■■■

2.        **Fla. Stat. § 725.04 bars application of the voluntary payment doctrine**

Although the voluntary payment doctrine is inapplicable in the first instance for the reasons explained above, Fla. Stat. § 725.04 would bar its application, anyway.  The statute provides:

> When a suit is instituted by a party to a contract to recover a payment made pursuant to the contract and by the terms of the contract there was no enforceable obligation to make the payment or the making of the payment was excused, the defense of voluntary payment may not be interposed by the person receiving payment to defeat recovery of the payment.

Fla. Stat. § 725.04.  The statute serves to vitiate the voluntary payment defense under the circumstances described therein.  *See generally*, *Lord v. Die Polder*, 113 So. 2d 440, 442 (Fla. 2nd DCA 1959) (explaining application of the statute).

RJA submits that the statute is inapplicable here because "the Passport Agreement, under which Plaintiff sues, unequivocally obligated Plaintiff to pay the Processing Fees."  *See* MSJ at 6.  Plaintiff disagrees.  The Passport Agreement unequivocally obligated Plaintiff to pay a Processing Fee that was not a disguised commission.  The case that RJA relies on in support of its argument is fundamentally distinguishable.  In *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653 (Fla. 5th DCA 1996), the Fifth DCA affirmed summary judgment in favor of the defendant hospital on claims that it overcharged patients for certain items such as Tylenol with codeine, Zantac and Cipro.  *Id*. at 655.  In sum, the plaintiffs alleged that the amounts charged were "disproportionate to the market price of the items in a non-hospital setting," *id*. at 655, and they sought relief under theories of unjust enrichment and money had and received, *id*. at 656.  The court held that Fla. Stat. § 725.04 did not bar the hospital's voluntary payment defense, because the contract between the parties indisputably required the plaintiffs to pay the hospital's prevailing rates as set forth in a "Master Charge List" – a "separate document which contained a statement of the hospital's then current charges."  *Id*. at 656.  In order to avoid that fact, the plaintiffs attempted to argue that a statute relating to hospital charges limited what the defendant could lawfully charge the plaintiffs irrespective of the contract's clear terms, but the court found that the statute, Fla. Stat. § 395.015(6), did not apply to a "direct" provider such as the defendant.  *Id*. at 656, n. 3. Accordingly, the court concluded that the plaintiffs' contractual obligations "are plainly not unenforceable *by the terms of the contract*, as required by [Fla. Stat. § 725.04]."  *Id*. at 658 (emphasis in original).

In *Hall*, there was nothing, contractual or otherwise, that limited the hospital's ability to charge the amounts on its "Master Charge List."  No contractual provision; no statute or common law; no other authoritative source.  In this case, however, the Passport Agreement contains express language that countervails against and tempers RJA's ability to charge the Processing Fees as set forth in the "Schedule of Charges."  The Passport Agreement unequivocally obligated Plaintiff to pay Processing Fees that were "not commissions," but were instead supposed to be for "transaction execution and clearing services."  And in the context of the commission-free Passport Account, the Court has construed that language and correctly determined that "RJA was contractually prohibited from charging a *de facto* per-transaction commission . . . ."[45]  There was no enforceable obligation for Plaintiff to pay the Processing Fees that RJA charged her.[46]  Accordingly, Fla. Stat. § 725.04 precludes RJA from asserting the voluntary payment defense.

For the reasons set forth above, RJA's MSJ on Count I should be denied.  RJA observes that it "did not force Plaintiff to open a Passport Account, to sign the Passport Agreement, or to make trades that would incur Processing Fees.  Plaintiff had choices."  Without reservation, Plaintiff agrees.  She chose to trade in RJA's commission-free Passport Account; chose to sign a Passport Agreement that specifically provided that "Processing Fees are not commissions;" and chose to make trades and incur Processing Fees under those circumstances.  But Plaintiff submits that RJA did not honor its contractual obligations by charging a *de facto* commission in Plaintiff's commission-free Passport Account.

### B.  Plaintiff's negligence claim is proper.

As a general rule, summary judgment is difficult to obtain in negligence cases: "The determination of negligence is ordinarily one for the trier of fact because of the necessity that the triter of fact assess the reasonableness of defendant's conduct under all the circumstances…. [Thus] [t]he party seeking to have an issue of negligence withdrawn from the jury in federal court bears a heavy burden."  *Smith v. Tennessee Valley Authority*, 699 F.2d 1043, 1044 (11th Cir. 1983); *see also TSC Industries, Inc. v. Northway, Inc*., 426 U.S. 438, 450 n. 12 (1976) ("the

---

[45] [DE 27 at 5-6].

[46] The payment was also excused.  In addition to the contract's representation that "Processing Fees are not commissions," the Passport Agreement also incorporates the FINRA rules, which automatically modified the Passport Agreement's terms to comport therewith.  Brink-SOF at ¶ 2(a).  As Plaintiff's expert has testified, FINRA rules 2010 and 2122, and former NASD rule 2430, prohibited RJA from charging a disguised commission.  Brink-SOF at ¶ 45-47.  Therefore, the Passport Agreement (as amended by those rules) likewise prohibited RJA from doing so.

**RICHMAN GREER, P.A.**
Miami ● West Palm Beach

jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment in negligence cases.").

Through its MSJ, RJA argues that Plaintiff's claim for negligence "is nothing more than a claim for a FINRA Rule 2122 violation masked as a common law claim."  *See* MSJ at 5.  Based on this faulty premise, RJA surmises that because the FINRA rules do not create a private cause of action, Plaintiff's negligence claim must fail. *See id.* at 8.  Further, RJA asserts that because it labeled its disguised commission a "processing fee," rather than a "handling fee," it is somehow immune from liability.  *See id.* at 9.  RJA mischaracterizes Plaintiff's negligence claim.  When read in its entirety, Plaintiff's complaint does not sue for simply a violation of Rule 2122 (and its predecessor NASD rule 2430), but rather, it alleges that RJA's failure to comply with FINRA/NASD rules is evidence that it breached its overriding duty of care – a duty to act in accordance with the standard of care used by like professionals in the community.[47]

## 1.    The Complaint alleges that RJA breached the standard of care owed to its customers, as evidenced in part by its violation of FINRA/NASD rules.

Courts around the country have held that violations of rules promulgated by a self-regulatory organization ("SRO"), such as NYSE, NASD, and FINRA, can be can be used as evidence to establish negligence and/or may be redressed through state common law negligence actions. *See Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 333 (5th Cir. 1981), abrogated on other grounds by *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ("[FINRA/NASD] rules are excellent tools against which to asses in part the reasonableness or excessiveness of a broker's handling of an investor's account."); *see also Javitch v. First Montauk Fin. Corp.*, 279 F.Supp.2d 931, 938 (N.D. Ohio 2003) (NASD rules are evidence of the reasonable standard of care in the securities industry); *Scott v. Dime Savings Bank*, 886 F.Supp. 1073, 1080–81 (S.D.N.Y. 1995) (violation of NASD rule is evidence of a broker's negligence); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng*, 697 F. Supp. 1224, 1227 (D.D.C. 1988) (same); *Lange v. H. Hentz & Co.*, 418 F.Supp. 1376 (N.D. Tex. 1976) (NASD rules can be used as evidence as to standard of care in the industry).

RJA relies on two cases in support of its argument.  The first, *Fox v. Lifemark Sec. Corp.*, 84 F. Supp.3d 239 (W.D.N.Y. 2015), does not involve allegations of negligence focused on a

---

[47] *E.g.,* [DE 1 at ¶¶ 59, 60, 63].

breach of the standard of care in the industry, but rather, solely on a breach of a FINRA rule (recommending purchases of interest in a direct participation program), and while it fits RJA's narrative in its MSJ, it ignores Plaintiff's allegations that RJA violated the "the standard of care used by similar professionals in the community under similar circumstances." [DE 1 at ¶ 58]. The second case, *Gallier v. Woodbury Fin. Services, Inc.*, 14-cv-888, 2015 WL 1296351 (S.D. Tex. Mar. 23, 2015), is even further removed from the facts of this case in that there, the plaintiff alleged the broker/dealer had a contract with FINRA to comply with FINRA's rules, and that as a third party beneficiary to that contract, was able to sue the broker/dealer for breach of contract (for violating the FINRA rule). *Id*. at *6. It was in this context, *i.e.* as a third party beneficiary, the court held that there was not a private cause of action for a FINRA rule violation. *Id*. at *6-8.

In *Merrill Lynch v. Cheng*, 697 F. Supp. at 1227, the District Court of the D.C. Circuit considered and rejected essentially the same argument RJA raises here. The Chengs brought a claim for negligence against an employee of Merrill Lynch, and contended, in support of their claim, that the employee violated Article III, Section 2 of the NASD's Rules of Fair Practice. *Id*. The employee moved to dismiss the claim, arguing that the NASD rules did not create a private right of action, and thus the Chengs' negligence count was an improper attempt at circumvention. *See id*. The court squarely rejected that argument. *Id*. Recognizing first and foremost that "that a stockbroker can be held liable to his client for negligence", the *Cheng* court reasoned that a negligence claim would not improperly circumvent a rule precluding private causes of action under SRO rules for two reasons: "[f]irst, violation by [the Merrill Lynch employee] of the [NASD] rule will not automatically result in his being held liable for negligence; it would simply be a factor for consideration by the jury as to whether he acted as a 'reasonable' person in his conduct toward the Chengs and their account with Merrill Lynch. [Second], the Chengs are bringing a common law claim, and not a federal claim, against Grace." *Id*. Thus, the court denied the motion to dismiss the Chengs' negligence count. *Id*. at 1229.

The reasoning in *Cheng* has been adopted and approved in this District.  In the case of *Remington v. Newbridge Securities Corp.*, 2013 WL 2444719, No. 13-60384-CIV (S.D. Fla. June 5, 2013), the class representative sued Newbridge, alleging that Newbridge breached its duty of care when it charged class members a disguised commission masquerading as a "handling fee," in violation of NASD Rule 2430.  *Id*. at *6.  In seeking dismissal of the

plaintiffs' negligence claim, Newbridge argued that "FINRA Rule 2430 does not create a private cause of action for negligence."  *Id*.  In rejecting this argument, the Court adopted the reasoning in *Cheng*, holding as follows:

> The Court finds the reasoning in *Cheng* to be applicable in this matter. While there may not be a private right of action for violation of Rule 2430, Plaintiffs are not suing merely for a violation of Rule 2430. Rather, they allege that Newbridge's failure to comply with the rule is evidence that they breached their duty of care, which includes a duty to act in accordance with the standard of care used by other professionals in the community.

*Id*.  Plaintiff's Complaint makes clear that in alleging negligence, it is a breach of the common law standard of care for which Plaintiff seeks redress.  For example, even the provision that RJA argues is "the heart of Plaintiff's negligence claim" belies RJA's suggestion that said claim is predicated entirely on RJA's violation of Rules 2122 and 2430.  In its MSJ, RJA cites to paragraph 8 of the Complaint, an introductory paragraph.  What that paragraph says is that  "a broker/dealer has a duty of care to act in accordance with the standard of care used by other professionals in the community," and that duty "includ[es]" charging customers a reasonable fee for its services…[a] duty codified by FINRA Rule 2122...."  *See* MSJ at 7, citing DE 1 at ¶ 8.  Notably missing is any statement that RJA's duty is limited to Rules 2122 and 2430.  To the contrary, elsewhere in the Complaint Plaintiff makes clear that Plaintiff's negligence claim is based on "the common law standard of care," "the standard of care used by similar professionals in the community under similar circumstances," which "includes, but is not limited to, a duty of fair dealing and to act in the best interest of its Customers without regard to its own financial or other interests."[48] And while Rules 2122 and 2430 are certainly relevant to this inquiry; they are not the exclusive yardstick by which RJA's conduct will be measured.[49]

---

[48] *See* [DE-1 at ¶¶ 45, 58].

[49] Contrary to RJA's statements, the Court has previously noted that Rules 2430 and 2122 are only "part" of the analysis.  Specifically, RJA argues that "the Court previously acknowledged that FINRA Rule 2122 and former NASD Rule 2430 underpin the 'duty' element of Plaintiff's negligence claim."  MSJ at p. 8, n. 1.  What the Court previously noted was that: "Plaintiff has sufficiently alleged that RJA owed Plaintiff and the class a duty of care in accordance with the standard of care used by similar professionals in the community," and then, in a footnote, the Court explains: "the relevant standard of care is reflected, ***in part***, in these rules [2122 and 2430]. (emphasis added).  [DE 27 at 7, n. 1].

RICHMAN GREER, P.A.
Miami • West Palm Beach



## 2.   The label that RJA employed to disguise its commission not pertinent.

RJA next attempts to distinguish its wrongful conduct from that of Newbridge by arguing that: (1) the fee at issue in Newbridge was a "handling" fee, and not a "processing" fee; and (2) FINRA has not yet fined RJA for its wrongful conduct.  These distinctions are irrelevant.

First, what FINRA has expressed concern with is the wrongful taking of a disguised commission, not the disguised label the wrongdoer attaches to it.[53]  For example, in the case of *FINRA v. E.S. Financial Services, Inc., n/k/a Brickell Global Markets, Inc.*, Case No. 2015045608701, FINRA entered into a consent order with a broker/dealer agreeing to a fine of $275,000 for in part charging customers a "transaction fee," labeled as "MISC" on customer trade confirmations that "was not reasonably related to any direct transaction-related services performed by the firm, or transaction related expenses incurred by the firm in processing transactions [but] [i]nstead, the fee was effectively an additional commission for the firm."[54]

---

[50] Brink-SOF at ¶¶ 48, 51.
[51] Brink-SOF at ¶¶ 48, 51
[52] Brink-SOF at ¶ 50.
[53] *See* [DE 1-2, wherein FINRA Executive Vice President and Chief of Enforcement is quoted as saying" "Trade confirmations and fee schedules must clearly reflect commission charges, and firms cannot disguise commissions by improperly describing them as charges for ancillary services."; *see also* DE 1-3, wherein FINRA warns all its members: "[u]nder NASD Rule 2340, any miscellaneous charges must be reasonable and related to the services performed…."]
[54] Brink-SOF at ¶ 52.
[55] Brink-SOF at ¶ 53.

**RICHMAN GREER, P.A.**
Miami • West Palm Beach

Second, the record is replete with evidence in the form of testimony that the labeling attached to a fee does not define whether it was lawfully charged.



Third, the fact that RJA has not yet been prosecuted by FINRA does not make RJA's conduct any less wrongful.  RJA's conduct is no different than that of Newbridge with perhaps one exception: when wrongfully charging its customers a disguised commission, Newbridge chose the label of "handling fee," whereas RJA chose the label of "Processing Fee" and "transaction fee."

In sum, RJA's argument misses the point by focusing on one allegation (that RJA violated FINRA rules) and not the negligence claim as a whole, which alleges RJA violated its standard of care.  There is no dispute that Plaintiff believes (and alleges) that RJA's violation of FINRA rules is evidence of RJA's breach of duty to the class members; but ultimately Plaintiff must prove that RJA breached the standard of care, not just FINRA rules.

**IV.    <u>Conclusion</u>.**

For all the foregoing reasons, Plaintiff respectfully requests this Court deny RJA's MSJ in its entirety.

---

[56] Brink-SOF at ¶ 12.
[57] Brink-SOF at ¶ 54.

RICHMAN GREER, P.A.
Miami ● West Palm Beach

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on **February 29, 2016** a true and correct copy of the foregoing, was electronically filed with the Clerk using the CM/ECF filing system and served upon on all counsel of record and/or *pro se* party(ies) listed below, either via transmission of Notices of Electronic Filing generated by the CM/ECF filing system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:      *s/ Lyle S. Shapiro*
Lyle E. Shapiro (FBN: 0120324)
lshapiro@richmangreer.com
Eric M. Sodhi (FBN: 0583871)
esodhi@richmangreer.com
Joshua L. Spoont (FBN: 053263)
jspoont@richmangreer.com
**RICHMAN GREER, P.A.**
396 Alhambra Circle
North Tower, 14th Floor
Miami, Florida 33134
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
*Attorneys for Jyll Brink, on her own behalf*
*and on behalf of those similarly situated.*

## SERVICE LIST
### (all via e-mail)

Lyle E. Shapiro, Esq.
Eric M. Sodhi, Esq.
Joshua L. Spoont, Esq.
Richman Greer, P.A.
396 Alhambra Cir., North Tower, 14th Fl.
Miami, FL 33134
lshapiro@richmangreer.com
esodhi@richmangreer.com
jspoont@richmangreer.com
*Attorneys for Plaintiffs*

Randall C. Place, Esq.
Sara E. Hanley, Esq.
Place and Hanley, LLC
1415 Panther Lane
Naples, FL 34109
randall_place@placeandhanley.com
sara_hanley@placeandhanley.com
*Attorneys for Plaintiffs*

Darren Blum, Esq.
Blum Law Group
110 E. Broward Blvd.
Suite 1700
Ft. Lauderdale, FL 33301
blum@stockattorneys.com
*Attorneys for Plaintiffs*

Samuel W. Braver, Esq.
G. Calvin Hayes, Esq.
Buchanan Ingersoll & Rooney PC
401 E. Jackson St., Suite 2400
Tampa, FL 33602
braversw@bipc.com
calvin.hayes@bipc.com
*Attorneys for Defendant*

**RICHMAN GREER, P.A.**
**Miami ● West Palm Beach**