UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-cv-60334-WPD

JYLL BRINK, on her own behalf,
and behalf of those similarly situated,

    Plaintiffs,

vs.

RAYMOND JAMES & ASSOCIATES, INC.,

    Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE 89], filed herein on May 9, 2016.  The Court has carefully considered the Motion [DE 89], Response [DE 93], Reply [DE 94], the arguments by counsel at the May 27, 2016 hearing, and is otherwise fully advised in the premises.

### I.     BACKGROUND

Plaintiff, Jyll Brink ("Plaintiff"), on her own behalf and on behalf of all those similarly situated (collectively, the "Customers" or "putative Class Members"), filed a Complaint against Raymond James & Associates, Inc. ("Defendant" or "RJA") on February 17, 2015. [DE 1].

According to the allegations of the Complaint, Plaintiff is a Florida resident living in Broward County. [DE 1] at ¶ 14.  Defendant RJA is a Florida Corporation which maintains its principal place of business in St. Petersburg, Pinellas County, Florida, and is authorized to do business in Florida. ¶ 15.  RJA is a full service broker-dealer registered with the Securities and Exchange Commission. *Id.*  RJA engages in the business of providing securities brokerage

1

services to individuals and corporate clients, and is engaged in most aspects of securities distribution and investment banking. *Id.* Among other organizations, Raymond James is a member of the Financial Industry Regulatory Authority ("FINRA"). *Id.*

Plaintiff created a Passport Investment Account with the Defendant. ¶ 49. The Passport Investment Account program was offered by RJA as an alternative to a traditional commission-based account. ¶ 2. Customers are not charged a commission for any individual trades under the Passport Account. ¶ 3. Instead, under this program, customers are charged an "Advisory Fee" based on a percentage of the total value of the qualifying assets in the Passport Account (payable quarterly) in lieu of commissions on individual trades. ¶¶ 3, 41. In addition, under this program, customers are charged a flat fee per transaction (a "Processing Fee") to reimburse RJA for the execution and clearing of trades. ¶¶ 4-5. As set forth in the Passport Agreement, this Processing Fee – which RJA charged at $30.00-$50.00 per "Fee Investment" trade prior to October 1, 2013 and $9.95-$30.00 per trade thereafter – was merely supposed "to defray the expenses incurred in facilitating the execution and clearing" of its customers' fee-eligible trades. ¶¶ 4-5. In addition, the Passport Agreement indicates that the Processing Fees are not commissions. ¶ 5.

Plaintiff alleges that the per-trade Processing Fee charged by RJA (sometimes labeled as a "Misc. Fee," *see* [DE 1-6]) was both unauthorized and unreasonable, as it bore no reasonable relationship to the expenses that RJA actually incurred in processing and executing these transactions. Plaintiff alleges that the expenses incurred in facilitating the execution and clearing of customer transactions were significantly lower than the Processing Fees charged by the Defendant. ¶ 6. RJA's actual expenses were no higher than $5.00 per transaction. *Id.* As a result, Plaintiff argues that the Processing Fees were unauthorized commissions, assessed in violation of the Passport Agreement. ¶ 40. Plaintiff alleges that RJA "profited to the tune of tens (if not

hundreds) of millions of dollars in hidden commissions through a purported expense-defrayment fee that, unbeknownst to Plaintiff and other customers, included a mark-up which soared to nearly one thousand percent (1,000%) at times." *Id.* at ¶ 6. The Complaint alleges two causes of action against Defendant: (1) breach of contract; and (2) negligence. *See* [DE 1].

On May 9, 2016, Defendant filed the instant motion to dismiss the Complaint for lack of subject matter jurisdiction. [DE 89]. Specifically, Defendant argues that the claims set forth in the Complaint are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 77 *et seq.* and therefore the claims must be dismissed on SLUSA preclusion grounds. [1]

## II.   DISCUSSION

Defendant moves to dismiss the Complaint on the grounds that the claims are precluded by SLUSA, 28 U.S.C. § 78bb(f).

In 1995, Congress enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA") to thwart the perceived abuses private securities fraud class actions, *i.e.*, "'injur[ing] the entire U.S. economy' by rewarding 'nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and manipulation by class action lawyers of the clients whom they purportedly represent.'" *Instituto De Prevision Militar v. Merrill Lynch* ("*Instituto*"), 546 F.3d 1340, 1345 (11th Cir. 2008) (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006). The PSLRA made litigation of private federal securities fraud claims more difficult for plaintiffs by limiting recoverable damages and attorney's fees, restricting compensation to lead plaintiffs, mandating sanctions for frivolous litigation, authorizing a stay of discovery pending resolution of any motion to dismiss, and erecting heightened pleading requirements. *See* 15 U.S.C. § 78u-4; *Dabit*, 547 U.S. at 81.

---

[1] Courts use both the terms preclusion and preemption to refer to SLUSA's prohibition of state law based securities class action lawsuits.

However, an unintended consequence of the PSLRA was a migration of class actions under state law, often in state court, by plaintiffs seeking to avoid the obstacles set by the PSLRA. *Dabit*, 547 U.S. at 82. In an effort to deter this phenomenon, Congress enacted SLUSA "[t]o stem this 'shif[t] from Federal to State courts' and 'prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of' the Reform Act." *Dabit*, 547 U.S. at 82. SLUSA closed a loophole in the PSLRA by providing a removal mechanism from state to federal court, effectively eliminating any state court forum for securities fraud related lawsuits.

Preclusion pursuant to SLUSA requires four elements, all of which must be met for the federal court to hold that SLUSA applies and therefore dismiss the case: "(1) the suit is a covered class action, (2) the plaintiffs' claims are based on state law, (3) one or more covered securities has been purchased or sold, and (4) the defendant misrepresented or omitted a material fact in connection with the purchase or sale of such security." *Herndon v. Equitable Variable Life Ins. Co.*, 325 F.3d 1252, 1253 (11th Cir. 2003); *see also* 28 U.S.C. 78bb(f)(1).

The Court is not limited to a review of the Complaint itself in determining whether the claims are preempted under SLUSA. *See Cordova v. Lehman Bros., Inc.*, 413 F. Supp. 2d 1309, 1319 (S.D. Fla. 2006) (holding that courts may look at the "essence" of the claim to prevent artful drafting from circumventing SLUSA preemption); *Marchak v. JP Morgan Chase & Co.*, 84 F. Supp. 3d 197, 211 (E.D.N.Y. 2015) (holding that a court may "look beyond the face of the…complaints to determine whether they allege securities fraud in connection with the purchase or sale of covered securities") (citation omitted).

Here, Defendant argues that Plaintiff is precluded from bringing either claim on behalf of a class under SLUSA because (a) it is a covered class action, (b) it is based on Florida common

4

law, (c) it involves the purchase or sale of covered securities, and (d) it centers around purported misrepresentations and/or omissions by the Defendant in connection with the purchase or sale of those covered securities. Defendant contends that the state law claims for breach of contract and negligence are merely a "smokescreen" in a case that is actually about alleged omissions and misrepresentations in connection with the purchase and sale of covered securities in an effort to circumvent SLUSA.

Plaintiff concedes the first three prongs are met -- (1) the suit is a covered class action, (2) the claims are based on state law, (3) one or more covered securities has been purchased or sold. However, Plaintiff argues that Defendant fails to demonstrate the fulfillment of the element that "the defendant misrepresented or omitted a material fact in connection with the purchase or sale of such security."

First, Plaintiff argues that the claims are not preempted under SLUSA because the omissions and misrepresentations were not material to the decision to purchase covered securities. *See Chadbourne & Parke LLP v. Troice*, 134 S.Ct. 1058, 1066 (2014) ("A fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' *unless it is material to a decision* by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'") (emphasis added). Plaintiff argues that omissions or misrepresentations regarding handling fees or processing fees are not material to an investor's decision to purchase or sell a covered security since these fees do not impact the value of any stock price bought, sold, or held by the Plaintiff. Plaintiff cites favorably to *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 541 (2nd Cir. 1996) (holding in the context of a section 10(b) securities fraud claim that allegedly disguised commissions in the form of overcharging more than the broker's actual cost for handling, service, and processing fees were not material as

5

a matter of law to a reasonable investor's decision to purchase or sell securities) ("Simply stated, reasonable minds could not find that an individual investing in the stock market would be affected in a decision to purchase or sell a security by knowledge that the broker was pocketing a dollar or two of the fee charged for the transaction."); *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012) (holding that improperly inflated handling, postage, and insurance fees to include a profit were not material to the plaintiff's or any class members' investment decisions). Similarly, Plaintiff argues that any alleged misrepresentations by RJA regarding the Processing Fees did not have a material impact on investment decisions to buy, sell, or hold a security.

*Feinman* and *Appert* are distinguishable from the present action[2], however, because, in those cases, the inflated amount charged in excess of the actual cost was between $1.00 and $2.00. In this case, however, the undisclosed commissions allegedly charged to investors for the clearing and execution of securities transactions was significantly higher. The Complaint alleges that the clearing and execution of securities transactions costs no more than $5.00, but that RJA charged between $30.00 and $50.00 per transaction. Because the amounts charged and retained by Defendant were significantly higher than those charges in both *Feinman* and *Appert*, Plaintiff's reliance on those cases is unwarranted. Accordingly, the Court finds that the misrepresentation regarding the Processing Fees was material to a reasonable investor's decision to purchase a covered security in an allegedly commission free account given that the amount charged for the execution and clearing of trades was far in excess of the actual cost. In addition, the Passport Investment Account program itself was material to a reasonable investor's decision to purchase or sell covered securities. Under the Passport Account, investors are charged a

---

[2] The Court also notes that the *Feinman* and *Appert* decisions are not binding on this Court, who must instead look to the Eleventh Circuit Court of Appeals and the Supreme Court.

Processing Fee in lieu of a commission. Defendant allegedly created this alternative so investors engaged in high-volume trading would not have to incur commission costs at the conclusion of each securities transaction. Thus, if an investor created a Passport Account, the absence of a commission would therefore be material to the decision to purchase or sell covered securities. Accordingly, because Defendant misrepresented commissions as Processing Fees, the misrepresentation of the Passport Investment Account program was material to the decision to purchase covered securities.

Additionally, Plaintiff contends that Defendant fails to establish the requisite "in connection with" requirement between the alleged undisclosed commission and the securities transactions, as the asserted breach of contract and negligence claims only tangentially arise in the context of investing in securities. *See Dabit*, 547 U.S. at 85; *Troice*, 134 S. Ct. 1066. SLUSA's "in connection with" requirement mandates that the purportedly fraudulent conduct "coincide with" a securities transaction in a material, non-tangential way. *See Dabit*, 547 U.S. at 85 ("Under our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else."); *Troice*, 134 S. Ct. at 1066 ("In our view, the scope of this language does not extend further. To put the matter more specifically: A fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'"). In *Instituto*, the Eleventh Circuit held that SLUSA's "in connection with the purchase or sale" requirement should be construed flexibly to effectuate its purpose rather than technically or restrictively. 546 F.3d at 1345.

Defendant argues that the "in connection with" requirement is satisfied in this case since Plaintiff alleges that Defendant fraudulently concealed the actual cost of executing and clearing

7

securities transactions and the result of the fraudulent concealment was an improper commission for each transaction to purchase or sell covered securities.  Defendant asserts that Plaintiff's reliance on *Troice* for the test of the required connection is misplaced because *Troice* focused on clarifying the extent to which SLUSA can preclude claims involving uncovered securities. *See* 134 S.Ct. at 1066.  Defendant points out that *Troice* specifically stated that it was not intended to overturn or modify *Dabit*. 134 S.Ct. at 1066.  Defendant also cites to the Eleventh Circuit's application of the *Dabit* in *Instituto*, in which the court held that SLUSA's "in connection with" requirement is satisfied if either the fraud induced the plaintiff to invest with the defendant or the fraudulent scheme coincided with and depended upon the purchase and sale of covered securities. *See* 546 F.3d at 1348, 1349.

Upon a careful consideration of the allegations in the Complaint, the Court agrees with Defendant that the alleged omissions and misrepresentations of the undisclosed commissions occurred in connection with the purchase or sale of covered securities in the material manner required by the Supreme Court since the execution and clearing of a trade is bound up with each purchase and sale of a covered security.  Because Plaintiff was allegedly charged a Processing Fee hiding an undisclosed commission with each transaction, the fees coincided with the purchase or sale of securities and thus the requirement is satisfied.  As a result, the claims are preempted by SLUSA.

### III.   CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE 89] is **GRANTED**;

2. This case is hereby **DISMISSED** on SLUSA preclusion grounds;

8

3.  The Clerk is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Broward County, Florida, this 6th day of June, 2016.

*/s/ William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:

Counsel of record