# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY ___AP___
Deputy Clerk

**Jul 9, 2018**

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. MIAMI

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 09, 2018

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 16-14144-BB
Case Style: Jyll Brink v. Raymond James & Associates, In
District Court Docket No: 0:15-cv-60334-WPD

The enclosed judgment is hereby issued as the mandate of this court.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Brenda H. McConnell
Phone #: (404) 335-6209

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 16-14144

_____

District Court Docket No.
0:15-cv-60334-WPD

JYLL BRINK,
on her own behalf, and on behalf of those similarly situated,

           Plaintiff - Appellant, ,

versus

RAYMOND JAMES & ASSOCIATES, INC.,

           Defendant - Appellee.
           .

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: June 08, 2018
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

**ISSUED AS MANDATE:  JULY 9, 2018**

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-14144
_____

D.C. Docket No. 0:15-cv-60334-WPD

JYLL BRINK,
on her own behalf, and on behalf of those similarly situated,

                     Plaintiff - Appellant,

versus

RAYMOND JAMES & ASSOCIATES, INC.,

                     Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 8, 2018)

Before JORDAN and JILL PRYOR, Circuit Judges, and REEVES,[*] District Judge.

---

[*] Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

JILL PRYOR, Circuit Judge:

Jyll Brink appeals the district court's dismissal of her putative class action complaint. She argues that the district court erred in determining that her state law claims for negligence and breach of contract against Raymond James and Associates, Inc. ("RJA") were precluded under Title I of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), which prohibits class actions alleging state law causes of action based on conduct that constitutes federal securities fraud. Specifically, she disputes that her complaint alleged that RJA made a "misrepresentation . . . of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A). After careful review, we reverse the district court's order and remand for further proceedings consistent with this opinion.

## I.     BACKGROUND[1]

As an alternative to a traditional commission-based investment account, RJA offered a "Passport Account" program that charged customers an annual advisory fee based on the total value of qualifying assets in the account instead of a commission based on each individual trade. In addition, Passport Account customers were charged a flat fee per transaction. In its written agreement with

---

[1] At the motion to dismiss stage, we accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, here, Brink. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

each Passport Account customer (the "Passport Agreement"), RJA described this flat fee as a "Processing Fee" for "transaction execution and clearing services" and stated that the Processing Fees were "not commissions." Compl. at 2 (Doc. 1).[2]

RJA published a schedule of the Processing Fees in the Passport Agreement. Before October 1, 2013, RJA's Processing Fees ranged from $30.00 to $50.00 per transaction, depending on the type of security. Beginning October 1, 2013, RJA reduced the Processing Fees to range from $9.95 to $30.00. But the actual costs incurred in the execution and clearing of the transactions were much lower than the Processing Fees charged, allegedly no more than $5.00 per transaction. RJA kept as profit any amount above the actual costs associated with transaction execution and clearing.

Brink filed this putative class action complaint alleging state law claims for breach of contract and negligence. Brink alleged that because Passport Account customers had agreed only to pay for "expenses incurred in facilitating the execution and clearing" of their trades, RJA's undisclosed profit built into the Processing Fees breached the Passport Agreement. *Id.* at 3. She also claimed that RJA breached its duty of care owed to its customers, which she alleged included a duty to charge customers a reasonable fee for its services.

---

[2] Unless otherwise specified, all citations in the form of "Doc. #" refer to the district court docket entries.

3

After class certification discovery, Brink moved for class certification, and RJA moved for summary judgment. While both of those motions were still pending, RJA filed a motion to dismiss for lack of subject matter jurisdiction, arguing that Brink's state law claims were disguised claims for federal securities fraud. Thus, RJA claimed, Brink's putative class action was precluded under SLUSA. As relevant here, SLUSA provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>    (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1)(A). The district court concluded that Brink's claims were precluded because RJA's alleged conduct constituted "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," *id.*, and granted RJA's motion to dismiss. This is Brink's appeal.

## II.   STANDARD OF REVIEW

"We review *de novo* . . . the district court's conclusion that SLUSA precludes [a plaintiff] from bringing . . . state law claims." *Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1344 (11th Cir. 2008).

## III.   DISCUSSION

Before addressing whether SLUSA precludes Brink's putative class action, we provide a brief background on the history and purpose of SLUSA. Federal law

4

"broadly prohibits deception, misrepresentation, and fraud in connection with the purchase or sale of any security." *Merrill Lynch v. Dabit*, 547 U.S. 71, 78 (2006) (internal quotation marks omitted).  Almost half a century ago, the Supreme Court recognized an implied right of action for private citizens alleging federal securities fraud.  *See Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.* 404 U.S. 6, 13 & n.9 (1971).  Concerned about "significant evidence of abuse in private securities lawsuits," H.R. Rep. No. 104-369, at 31 (1995) (Conf. Rep.), Congress later passed the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104-67, 109 Stat. 737 (1995) (codified at 15 U.S.C. §§ 77z and 78u-4).  To combat these "perceived abuses," the PSLRA implemented multiple reforms in the context of private federal securities fraud lawsuits, including "heightened pleading requirements" and limitations on "recoverable damages and attorney's fees." *Dabit*, 547 U.S. at 81.

Although the PSLRA apparently was effective in deterring nuisance "suits . . . [based on] federal securities fraud class actions," it also "prompted at least some of the plaintiffs' bar to avoid the federal forum altogether." *Id.* at 82.  Troubled by the flood of cases being brought in state court, Congress enacted SLUSA to "stem this shift from Federal to State courts and prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the PSLRA.  *Id.* (alterations adopted) (internal quotation marks

5

omitted).  To that end, SLUSA provides that "[n]o covered class action based upon the statutory or common law of any State . . . may be maintained in any State or Federal court by any private party alleging . . . a misrepresentation of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1)(A).[3]

The question before us today is whether Brink's putative class action alleges that RJA made such a misrepresentation.  If it does, then SLUSA precludes Brink's putative class action based on state law causes of action.  If it does not, then SLUSA is inapplicable, and Brink's case may continue.  We conclude that SLUSA does not prohibit Brink's putative class action because RJA's alleged failure to disclose the hidden profit built into the Processing Fee is not a misrepresentation of a material fact for purposes of SLUSA.  *Id.*

**A.   Subject Matter Jurisdiction**

As with any case, we first must address our jurisdiction.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  The district court dismissed this case for lack of subject matter jurisdiction after concluding that SLUSA precluded Brink's claims.  But this Court suggested in *Riley v. Merrill Lynch* that we analyze jurisdiction differently in SLUSA cases depending on whether a state law class

---

[3] SLUSA also precludes covered class actions alleging "that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security," 15 U.S.C. § 78bb(f)(1)(B), but neither party suggests that this provision is at issue here.

action was filed directly in federal court in the first instance or was removed to federal court under SLUSA's removal provision.[4] *See* 292 F.3d 1334, 1336-37 (11th Cir. 2002), *abrogated on other grounds by Dabit*, 547 U.S. at 89.  In the former circumstance, we must assess diversity jurisdiction before considering SLUSA preclusion.

In *Riley*, the trustees of the Performance Toyota, Inc. Profit Sharing Plan ("Performance Plan") and the trustee of the Master Packaging, Inc. 401(k) plan ("Master Packaging") filed a class action lawsuit against Merrill Lynch in federal court alleging violations of two Florida statutes.  The plaintiffs argued that Merrill Lynch made material misrepresentations that induced the class members to purchase and retain shares of a certain fund.  *Id.* at 1336.  Merrill Lynch moved to dismiss, arguing that SLUSA barred the plaintiffs' class action and that there was no diversity jurisdiction.  *Id.*  While that motion was pending, Performance Plan voluntarily dismissed and refiled in state court.  Master Packaging maintained its claims in federal court.  After Performance Plan refiled in state court, Merrill Lynch removed the case back to federal court, where it was consolidated again with the Master Packaging action.  *Id.*

---

[4] "Any covered class action brought in any State court involving a covered security . . . shall be removable to the Federal district court . . . and shall be subject to [SLUSA's preclusion provision]." 15 U.S.C. § 78bb(f)(2).

We analyzed Merrill Lynch's motion to dismiss differently as to the two plaintiffs. As for Performance Plan's claims, we reasoned that when a defendant removed a state law class action to federal court pursuant to SLUSA, and "SLUSA was the only basis for removal," the first step of our jurisdictional analysis was to determine "whether SLUSA permitted removal from state to federal court." *Id.* at 1337. This required "determin[ing] SLUSA's applicability to" the action. *Id.* at 1340. We concluded that because SLUSA applied to and therefore barred Performance Plan's claims, the district court properly dismissed those claims rather than remanding the action to state court. *Id.* at 1346.

Master Packaging's claims, however, were filed "in diversity directly in federal court." *Id.* at 1337. We therefore were "required to assess whether [diversity jurisdiction was present] before addressing the merits of its [state law] claims and before determining whether SLUSA barred those claims." *Id.* at 1336-37. If "diversity was lacking . . . , this determination eliminate[d] the need to reach the SLUSA question." *Id.* at 1339-40.

Here, Brink filed suit directly in federal court. The district court thus should have determined whether diversity jurisdiction was present before considering SLUSA preclusion. Following *Riley*'s approach, we assess diversity jurisdiction

before deciding whether SLUSA applies. Because diversity jurisdiction has been properly pled in this case, we proceed to consider the SLUSA preclusion issue.[5]

## B.   SLUSA Preclusion

SLUSA precludes "covered class action[s]" based on state law causes of action that allege "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A). It is undisputed that Brink's putative state law class action is a "covered" one and that the securities at issue are covered securities.[6] We thus must determine whether the conduct alleged in Brink's complaint—that RJA built a profit into the Processing Fee while representing to its Passport Account customers that the Processing Fee covered only the actual costs of transaction execution and clearing—constitutes a "misrepresentation or omission of a material fact in connection with the purchase or sale" of those securities, despite Brink having pled claims for breach of contract

---

[5] Before oral argument, Brink moved to amend her complaint to correct her jurisdictional allegations. That motion was previously denied as unnecessary. We *sua sponte* reconsider, and the motion is GRANTED. As amended, Brink's complaint adequately alleges diversity of citizenship. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1193 n.24 (11th Cir. 2007) (explaining that the Class Action Fairness Act modified the diversity requirement for certain class actions so that "only one member of the plaintiff class—named or unnamed—must be diverse from any one defendant"). Although Brink fails to identify a diverse class member, at this stage of the proceedings there is no class action nor any class members. Her allegations are sufficient because she has shown that there is a "foreseeable possibility" that there will be a diverse class member upon class certification. *Clausnitzer v. Federal Exp. Corp.*, 621 F. Supp. 2d 1266, 1270 (S. D. Fla. 2008).

[6] "A 'covered class action' is a lawsuit in which damages are sought on behalf of more than 50 people. A 'covered security' is one traded nationally and listed on a regulated national exchange." *Dabit*, 547 U.S. at 83.

9

and negligence. *See Behlen v. Merrill Lynch*, 311 F.3d 1087, 1090, 1094 (11th Cir. 2002) (determining that although the plaintiff had alleged breach of contract, it was "clear that the crux of the complaint was that the defendants either misrepresented or omitted crucial facts about the . . . shares, thus causing him and the class to invest in inappropriate securities"). As Brink does not dispute that her breach of contract and negligence claims are in fact claims about RJA's misrepresentation regarding the Processing Fee, we begin our analysis of whether the alleged misrepresentation was material.

Materiality has special meaning in the context of federal securities fraud, as well as in SLUSA.[7] The Supreme Court has explained that materiality in federal securities law requires a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Basic Inc. v. Levinson*, 485

---

[7] We conclude that it is appropriate to look to the meaning of materiality in securities fraud cases brought under § 10(b) and Rule 10-5 to understand SLUSA's materiality requirement. *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 616 (7th Cir. 2012) ("The language in SLUSA is similar to that in § 10(b) and Rule 10b-5 and there is no basis to construe 'materiality' differently under these provisions."); *cf. Instituto de Prevision Militar*, 546 F.3d at 1348 (explaining that SLUSA's "in connection with the purchase or sale" language "covers the same range of activities that the SEC could prosecute as violations of § 10(b) and Rule 10b-5"). The Supreme Court has explained that when Congress used language in SLUSA "identical" to the language used in § 10(b) and Rule 10b-5, it intended for that language to have "the same meaning" in both contexts. *See Dabit*, 547 U.S. at 85-86 (construing the phrase "in connection with the purchase or sale" of securities in SLUSA to have the same meaning as the identical language used in § 10(b) and Rule 10b-5).

U.S. 224, 231-32 (1988) (internal quotation marks omitted).[8] Thus, as RJA concedes, for SLUSA to preclude a state law class action the misrepresentation must "make[] a significant difference to someone's decision to purchase or to sell a covered security." Appellee's Br. at 26 (quoting *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1066 (2014)).

Applying this standard, we have concluded that a misrepresentation that would only influence an individual's choice of broker is not "material" for federal securities fraud actions brought under § 10(b) and Rule 10b-5. *See SEC v. Goble*, 682 F.3d 934 (11th Cir. 2012). As we explained in *Goble*:

> This court has said that the test for materiality in the securities fraud context is whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action. We understand this "course of action" to mean an investment decision—not an individual's choice of broker-dealers. . . . We hold that a misrepresentation that would only influence an individual's choice of broker-dealers cannot form the basis for § 10(b) securities fraud liability.

*Id.* at 943-44 (citations and internal quotation marks omitted).

---

[8] RJA argues that federal securities fraud cases brought by private plaintiffs, such as *Basic Inc.*, are inapplicable because the Supreme Court held in *Dabit* that SLUSA preclusion, like § 10(b) and Rule 10b-5, sweeps more broadly than the judicially created private right of action for federal securities fraud. But *Dabit* concerned the identity of the plaintiffs, not the materiality of the misrepresentations. *Id.* at 84, 89. Since *Dabit*, the Supreme Court has relied on private securities fraud cases to inform its interpretation of the phrase "material fact in connection with the purchase or sale" in SLUSA. *See Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1066 (2014) (relying on *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309 (2011), a private securities fraud class action, for the definition of material in SLUSA). We thus conclude it is appropriate to look to the treatment of materiality in such cases.

Following this reasoning, the choice of a type of investment account, much like the choice of a broker-dealer, is not intrinsic to the investment decision itself. Although RJA's alleged misrepresentation regarding the Processing Fee might have influenced a reasonable investor's decision to pick the Passport Account over another type of account, that does not make the alleged representation "material" under SLUSA.

Importantly, RJA did not "mislead [its] customers as to what portion of the total transaction cost was going toward purchasing securities versus the cost of the broker's involvement."  *United States v. Litvak*, 808 F.3d 160, 176 (2d Cir. 2015). Further, Passport Account customers chose to trade securities with full knowledge of the amount of the Processing Fee for each trade and never paid more than they agreed.  We do not believe that a reasonable investor would have made different investment decisions had she known that some of the Processing Fee—a fee she had agreed to pay and presumably had included in her cost-benefit calculation before making each trade—included profit for RJA instead of merely covering the transaction execution and clearing costs.

We find it persuasive that two other circuits likewise have determined that a hidden profit on a processing or transaction fee is not material under federal securities law.  In a Second Circuit case, investors alleged that a brokerage firm charged hidden commissions on transactions, labeled as "transaction fees" on the

12

transaction confirmation slips. *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 540 (2d Cir. 1996).[9]  The Second Circuit held that the alleged conduct did not constitute federal securities fraud because the misrepresentation was not material as a matter of law:  "Simply stated, reasonable minds could not find that an individual investing in the stock market would be affected in a decision to purchase or sell a security by knowledge that the broker was pocketing a dollar or two of the fee charged for the transaction." *Id.* at 541.  Similarly, the Seventh Circuit has held that SLUSA did not preclude a state law breach of contract claim where the allegation was that the broker-dealer "improperly inflated the [handling, postage and insurance fee] to include a profit" because the inflated fee was "not objectively material to . . . any class members' investment decisions." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012).

RJA argues that *Feinman* and *Appert* are distinguishable because the alleged hidden profit built into the Processing Fee in this case is much higher than the charges in those two cases.  We are unconvinced.  Here, it is true that the alleged undisclosed profit is more than "a dollar or two," but this is a distinction without a difference:  Brink, just like the plaintiffs in *Feinman* and *Appert*, knew how much she was being charged for costs associated with each transaction and was never

---

[9] RJA insists that *Feinman* is "wholly inapplicable because it was decided prior to SLUSA's enactment."  Appellee's Br. at 27.  But *Feinman* construed the materiality requirement under federal securities law, which, as we explained in the previous footnotes, sheds light on materiality for SLUSA purposes.

charged more than she agreed to pay. It is the nature of the fees, not their amount, that renders the misrepresentation immaterial as a matter of law.

Here, RJA's alleged undisclosed profit on the Processing Fee for each transaction—a fee for transaction execution and clearing, known and agreed to in advance by Passport Account customers—objectively could not make a significant difference to a reasonable investor's decision to purchase or sell a covered security. As the court in *Feinman* noted, "[i]f brokerage firms are slightly inflating the cost of their transaction fees, the remedy is competition among the firms in the labeling and pricing of their services, not resort to the securities fraud provisions." 84 F.3d at 541. The conduct alleged in Brink's complaint is therefore not "a misrepresentation or omission of a *material* fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A) (emphasis added). Because we conclude that the alleged misrepresentation was not material, we do not consider whether it was made "in connection with" the purchase or sale of covered securities.[10] SLUSA does not preclude Brink's putative class action.

---

[10] RJA relies on four out-of-circuit cases in support of its argument that SLUSA bars Brink's claims. *See Zola v. TD Ameritrade, Inc.*, 889 F.3d 920 (8th Cir. 2018); *Dommert v. Raymond James Fin. Servs., Inc.*, No. CIV A 1:06-CV-202, 2007 WL 1018234 (E.D. Tex. Mar. 29, 2007); *Broadhead v. Goldman Sachs*, No. 2:06CV009, 2007 WL 951623 (E.D. Tex. Mar. 26, 2007); *Lewis v. Scottrade, Inc.*, 204 F. Supp. 3d 1064 (E.D. Mo. 2016). Of course, we are not bound by these decisions. But we also note that the material facts of each case are distinguishable from the allegations before us. Indeed, in those cases the plaintiffs alleged that the broker had "manipulate[d] the price of the securities," *Zola*, 889 F.3d at 924, charged fees that "misle[]d [its] customers as to what portion of the total transaction cost was going toward purchasing securities," *Litvak*, 808 F.3d at 176, or received undisclosed kickbacks and

14

## IV.   CONCLUSION

We reverse the order of the district court dismissing this case for lack of subject matter jurisdiction and remand the case to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

incentives, creating a conflict of interest.  For example, in *Zola*, the defendant's alleged conduct "enabled high-frequency traders to manipulate the price of the securities, to the detriment of the plaintiffs."  889 F.3d at 924.  In *Dommert*, the defendants allegedly "failed to disclose important information . . . about fees and financial gain" and "established a system wrought with conflicts of interest in the form of undisclosed financial incentives."  2007 WL 1018234, at *2, *8 (internal quotation marks omitted).  In *Broadhead*, the allegations were that the defendants "add[ed] extra amounts . . . to certain bond purchase prices[,] . . . subtract[ed] certain amounts . . . from bond sales prices," and failed disclose the mark ups and mark downs to customers, providing statements that "only reflect[ed] a net selling or purchase price."  2007 WL 951623, at *1.  And in *Lewis*, the defendant allegedly failed to disclose that it routed its customers' trades to trading venues that offered the biggest kickbacks to the broker, at the expense of its customers obtaining a more advantageous price.  204 F. Supp. 3d at 1066, 1068.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 08, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 16-14144-BB
Case Style: Jyll Brink v. Raymond James & Associates, In
District Court Docket No: 0:15-cv-60334-WPD

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellee.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, BB at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs