**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
FORT LAUDERDALE DIVISION

**CASE NO.: 15-60334-CIV-DIMITROULEAS/SNOW**

JYLL BRINK, on her own behalf,
and on behalf of those similarly situated,

      Plaintiff,

v.

                                    **CLASS ACTION**

RAYMOND JAMES & ASSOCIATES, INC.,

      Defendant.

_____/

**FIRST AMENDED CLASS ACTION COMPLAINT**

    Plaintiff JYLL BRINK ("Plaintiff" or "Brink"), on her own behalf and on behalf of those

similarly situated (collectively, the "Customers" or "Class Members"), by and through

undersigned counsel, sues Defendant RAYMOND JAMES & ASSOCIATES, INC. ("Raymond

James"), and alleges the following based upon personal knowledge as to the allegations regarding

herself, and upon information and belief as to the other allegations:

**INTRODUCTION**

    1.    This lawsuit is brought as a class action by and on behalf of Raymond James'

Customers that were charged an unauthorized and unreasonable "Processing Fee," sometimes

labelled as a "Misc. Fee," by Raymond James when it executed trades for these Customers in

their "Passport Investment Account Program" (hereinafter the "Passport Account") – Raymond

James' commission free based account.

    2.    As an alternative to a traditional commission-based account wherein customers

pay a commission to Raymond James each time a trade or transaction is completed, Raymond

James offered its Customers a Passport Account program. This program is described by Raymond James as an "asset-based fee account program where you pay an annual Advisory Fee for the advice and services...." Notably, "[t]his fee is based on the level of assets in your [Passport] Account, independent of the level of trading activity." (*See* p. 5 of the "Passport Non-Discretionary Client Agreement" attached hereto as part of **Exhibit "A."**).

3.      Thus, pursuant to the terms of the Passport Account, customers who opted for the Passport Account would not be charged any commission on individual trades, but rather, would be charged a single "Advisory Fee" (payable quarterly) based on the total value of the qualifying assets in the Passport Account. This may be an attractive option for customers who anticipate conducting a high volume of trading.

4.      Customers who created a Passport Account were required to sign a "Passport Non-Discretionary Client Agreement" ("Passport Agreement"), and through this Passport Agreement, also agreed to pay Raymond James "for transaction execution and clearing services a flat fee per transaction…hereinafter referred to as a 'Processing Fee'." (emphasis added). (See p.1, Passport Agreement, Exhibit "A."). Prior to October 1, 2013, this Processing Fee ranged from $30.00 to $50.00 depending on the type of security involved in the transaction. On and after October 1, 2013, this Processing Fee ranged from $9.95 to $30.00. The Processing Fee is in addition to "a charge per transaction for handling and postage." (See p. 2, Passport Agreement, Exhibit "A.").

5.       The Passport Agreement makes clear that "Processing Fees are not commissions, but are to defray the expenses incurred in facilitating the execution and clearing of Client's portfolio transactions." (emphasis added) (*See* p.2, Passport Agreement, Exhibit "A."). Thus, Processing Fees were defined by Raymond James as a fee to reimburse Raymond James for the

execution and clearing of trades, and not as a fee that constituted a commission in a commission free account, or other remuneration to Raymond James.

6.     In reality, however, the "expenses incurred in facilitating the execution and clearing" of a Customer's transactions were significantly lower than the Processing Fees charged by Raymond James.  Upon information and belief, the cost to Raymond James for executing and clearing trades was no more than $5.00.  Therefore, the Processing Fee charged by Raymond James contained up to a 1000% mark-up for profit in some instances (and a significant mark-up in all instances), and as such, was transaction based remuneration to Raymond James – an unauthorized commission in an account that is supposed to be commission free.

7.     Because Customers only agreed to pay for "expenses incurred in facilitating the execution and clearing" of their trades, and contractually disavowed any obligation to pay a transaction-based commission, Raymond James breached the Passport Agreement every time it charged its Passport Account Customers this "Processing Fee."

8.     Similarly, a broker/dealer has a duty of care to act in accordance with the standard of care used by other professionals in the community, including to only charge customers a reasonable fee for its services.  This duty is codified by FINRA Rule 2122 (formerly Rule 2430) which requires "charges" to be "reasonable".

9.     FINRA has instructed that Rule 2122 requires that all charges, including "handling" and "processing" fees, be directly related to the expenses incurred in processing the transaction.  By charging a Processing Fee far in excess of the actual "expenses incurred in facilitating the execution and clearing" of the trade, Raymond James has breached its duty to its Customers and committed negligence.

10.     Because Raymond James charged an unauthorized and unreasonable "Processing Fee" for trades, and because this "Processing Fee" was not directly related to the "expenses incurred in facilitating the execution and clearing" of trades, Raymond James breached both its contractual and common law duties owed to its Customers.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs.  Further, because Raymond James operates from and services customers in over 250 offices across the country (including through at least 150 offices in 30 states other than Florida), at least one of the members of the proposed Class is a citizen of a different state than Raymond James (which, as alleged below, is a citizen of the State of Florida).

12.     This Court has personal jurisdiction over Raymond James because it is a Florida corporation, having its principal place of business in Pinellas County, Florida.  Additionally, Raymond James is engaged in substantial and not isolated activity within this State.  Further, the causes of action brought in this Complaint arise from Raymond James: (a) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; (b) committing a tortious act within this state; and/or (c) breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Raymond James is subject to personal jurisdiction here (and is thus deemed to reside here pursuant to § 1391(c)(2), and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

14.     Plaintiff Brink is a citizen of the State of Florida who is domiciled in Broward County.  Brink became a Customer of Raymond James on or about April 25, 2011.  A true and correct copy of Brink's Passport Agreement is attached hereto as part of Exhibit "A."[1]  Brink ended her relationship with Raymond James or about March 21, 2012.  On numerous occasions during that timeframe, Raymond James charged Brink the unauthorized and unreasonable "Processing Fee" that is the subject of this lawsuit.

15.     Defendant Raymond James is a Florida Corporation which maintains its principal place of business in St. Petersburg, Pinellas County, Florida, and is authorized to do business in this state.  Raymond James is therefore a citizen of the State of Florida.  Raymond James is a full service broker-dealer registered with the Securities and Exchange Commission.  Raymond James engages in the business of providing securities brokerage services to individuals and corporate clients, and, in its own words: "engaged in most aspects of securities distribution and investment banking."  (*See* p. 4, Statement of Financial Condition, September 30, 2014).[2]  Among other organizations, Raymond James is a member of the Financial Industry Regulatory Authority ("FINRA").

16.     The Raymond James family of companies was founded in 1962 and became public in 1983.  The holding company, Raymond James Financial, Inc., is currently traded on the New York Stock Exchange under the symbol "RJF".   According to its website, (www.raymondjames.com), the holding company, "through its three broker/dealer subsidiaries…

---

[1]     Sensitive personal and financial information has been redacted.
[2]     According to the Statement of Financial Condition (September 30, 2014, www.raymondjames.com/rja/sofc.pdf.com), Raymond James also "provide[s] clearing services

5

has more than 6,200 financial advisors serving approximately 2.6 million accounts in more than 2,600 locations throughout the United States, Canada, and overseas." In total, the holding company has total client assets of approximately $483 billion.

## CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this action on her own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

18.     The proposed Class is defined as:

> All former and current Customers of Raymond James in the United States and its territories who executed a "Passport Agreement" and owned a Passport Account, and from whom Raymond James deducted, retained, and/or charged a per transaction "Processing Fee" or "Misc. Fee" on transactions involving "Fee Investments" at any time (a) within 4 years preceding the filing of this lawsuit for the negligence count; and/or (b) within 5 years of filing this lawsuit for the breach of contract count (the "Class Period").

19.     Excluded from the Class are Raymond James, its parents, subsidiaries, affiliates, officers and directors, any entity in which Raymond James has a controlling interest, all Customers who make a timely selection to be excluded, governmental entities, all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and any of the foregoing's legal heirs and assigns.

20.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

21.     Plaintiff does not currently know the exact number of Class Members or their identities because such information is in the exclusive control of Raymond James and can only

---

for Raymond James Financial Services, Inc., …Raymond James Financial Services Advisors, Inc.,… and other affiliated entities and unaffiliated broker-dealers."

be ascertained by review of its records.  However, Plaintiff believes that there are thousands of Class Members, and that the Class Members are sufficiently numerous and geographically dispersed so that joinder of all Class Members is impracticable.   Plaintiff further believes that Raymond James charged the "Processing Fee" or "Misc. Fee" on tens of thousands of occasions during the Class Period.  Accordingly, it is believed that the amount in controversy easily exceeds $5,000,000.00.

22.     The claims of Plaintiff are typical of the Class, in that Plaintiff, like all Class Members, was charged this unauthorized and unreasonable "Processing Fee," often designated as a "Misc. Fee," on numerous occasions.   Further, the factual basis of Raymond James's misconduct is common to all Class Members and resulted in injury to all Class Members.

23.     Pursuant to Rule 23(b)(3), there are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class Members, including whether Raymond James:

a.   Charged a "Processing Fee" or "Misc. Fee"  that exceeded its direct and actual costs in executing and clearing (i.e. processing) Class Members' transactions;

b.   Charged a "Processing Fee" or "Misc. Fee" that was unreasonable;

c.   Breached its agreements with Class Members by charging an unauthorized "Processing Fee" or "Misc. Fee" that was not attributable to any specific cost or expenses incurred by Raymond James in executing and clearing the trade or determined by any formula applicable to all Customers;

d.   Was negligent by charging an unreasonable "Processing Fee" or "Misc. Fee"  that was not attributable to any specific cost or expenses incurred by Raymond James in executing and clearing the trade, or determined by any formula applicable to all Customers; and

e.   the appropriate measure of damages sustained by Plaintiff and other Class Members.

24.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated

persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense, and risk of inconsistent rulings that numerous individual actions would cause. Class treatment will also permit the adjudication of relatively small claims by Class Members who otherwise might not be able to afford to litigate their claims individually. This class action presents no difficulties in management that would preclude maintenance as a class action.

25. This forum is particularly desirable for the prosecution of this class action because Raymond James maintains offices in this District, and presumably maintains many of those corporate records which are particularly germane to this action here. Raymond James operates office complexes throughout this District, including in the cities of Miami, Fort Lauderdale and West Palm Beach. As a result of the foregoing, litigating on a class action basis in this forum will likely decrease the cost of discovery and prosecution, generally.

26. Plaintiff has suffered the harm alleged on behalf of the Class, and has no interests antagonistic to the interests of any other Class Members. She is committed to the prosecution of this action and has retained counsel experienced in the prosecution of class actions, and in complex commercial actions in particular. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class Members. Plaintiff is not aware of any other pending litigation concerning this controversy that involves Class Members.

27. Finally, the Class is readily definable and is one for which records likely exist in the files of Raymond James.

## COMMON FACTUAL ALLEGATIONS

### *"Handling Fees", "Processing Fees," "Misc. Fees", "Add'l. Fees" or Other Fees Must be Reasonable and Must Be Directly Related To a Specific Cost Or Expense Incurred In Processing The Customer's Trade.*

28.     On September 7, 2011, FINRA issued a news release, through which it publicized sanctions it levied against five broker/dealers for charging "handling fees" that served as a source of additional transaction based remuneration.  In those 5 instances, the amounts charged "were far in excess of the cost of the handling-related services the firms provided."  (*See* attached News Release, **Exhibit "B."**).

29.     As FINRA's chief of enforcement explained: "firms cannot disguise commissions by improperly describing them as charges for ancillary services."  In each of the 5 cases, FINRA found that the fees charged were not reasonable in that they did not bear any reasonable relation to any direct handling charges or services incurred in the processing of transactions.

30.     A few months later, on January 31, 2012, in an annual letter sent to all FINRA members (the so-called "FINRA Priorities Letter,") FINRA, referencing the five sanctions from the previous year, made clear that "any miscellaneous charges must be reasonable and related to the services performed."  (*See* p. 7, FINRA 2012 Priorities Letter, **Exhibit "C."**)

31.     FINRA's position on this issue is not dependent on how the wrongfully extracted fee is labeled (i.e. "Misc.", "Handling Fee", "Processing Fee," "Ticket Fee" etc.), but instead, whether it is reasonable.  For example, in late 2013, FINRA fined another broker/dealer for charging its customers a $40 fixed fee for "handling," sometimes reflected as "Add'l Fee." FINRA found that the fee "was fixed at $40 per transaction and was not attributable to any specific cost or expense incurred by the Firm in executing the trade, or determined by any formula applicable to all customers," and was nothing more than "a source of additional

transaction-based remuneration or revenue to the Firm, in the same manner as a commission….”
(See p. 3, FINRA Letter of Acceptance, Waiver, and Consent in Case No. 2012032027401,
**Exhibit "D."**)

<em><strong>Raymond James' "Processing Fee" is Neither Reasonable,<br>Nor Agreed To By Customers</strong></em>

32.    To open a Passport Account with Raymond James, Customers and Raymond James execute the Passport Agreement.  The Passport Agreement is complimented by Raymond James "Client Agreement" (*see* Exhibit "A"), which together govern the newly formed relationship between customer and broker/dealer.  (*See* p. 3, Passport Agreement, section entitled "Entire Agreement," Exhibit "A.").

33.    For purposes of compensating Raymond James for its "investment advisory services" the Passport Agreement places investments into three different categories: (1) "Fee Investments,"; (2) "Fee Exempt Investments,"; and (3) "Administrative Only Investments." Raymond James is compensated differently depending on which category a particular investment falls in.

34.    Most of the investments made by a customer in a Passport Account will fall into the "Fee Investments" category.  For "Fee Investments," Raymond James compensation is based on a percentage of the total "Account Value," the sum of all investments contained in the account, and calculated at the end of every quarter.  Thus, the customer is required to pay Raymond James an "Advisory Fee" once a quarter equal to an agreed upon percentage of that client's total "Account Value."   The default percentages in the Passport Agreement are as follows:

| Account Value* | Quarterly Fee | Annualized Fee |
|---|---|---|
| Passport Fee Investments: | | |
| First   $200,000 | 0.4375% | 1.750% |
| Next   $300,000 | 0.3750% | 1.500% |
| Amounts over $500,000 | 0.2500% | 1.000% |

\* The minimum Account value of Fee Investments is $25,000.

35.     The Passport Account makes clear that there will be a quarterly Advisory Fee paid based on the value of the account in lieu of any transaction based commissions.  To that end, the Passport Agreement includes the following (highlighting added) at p. 5:

**WHAT YOU SHOULD KNOW ABOUT FEE-BASED ACCOUNTS**

Passport is an asset-based fee account program where you pay an annual Advisory Fee for the advice and services provided by your Investment Adviser Representative as a part of your advisory relationship. This fee is based on the level of assets in your Account, independent of the level of trading activity.  By deciding to pay a fee based on services provided rather than transactions, you should understand that the fee may be higher than the cost of a commission alternative during periods of lower trading activity.

36.     The Passport Agreement even contains a section entitled "Additional Considerations," which provides further guidance to a customer who may be unclear as to the nature of the Passport Account and its fee structure, and advises (highlighting added) as follows:

**ADDITIONAL CONSIDERATIONS**

*          *          *

You should also consider whether it would be better for you to pay separately for each trade you execute and each product and service you use.

37.     Finally, and in case any doubt was left about the nature of the fee structure for the Passport Account, the Passport Agreement also refers customers to the Raymond James Financial Services Advisors, Inc. Firm Brochure ("Firm Brochure").

38.     The Firm Brochure explains that "[t]his account offers you the ability to pay an asset based advisory fee and a nominal processing fee (also described as a transaction charge) in

lieu of a commission for each transaction." (Emphasis added). (*See* p. 4 of the Firm Brochure, attached hereto as **Exhibit "E."**).

39.     The Passport Agreement also provides that the customer will pay a "Processing Fee" "for transaction execution and clearing services." The Passport Agreement contains a schedule of the so-called "Processing Fees" under the heading "Schedule of Charges for Execution and Clearing of Transactions in Passport Fee Investments." This language, as it appears in the Passport Agreement, is as follows (highlighting added):

**Securities Brokerage Remuneration** - Client agrees to pay RJA for transaction execution and clearing services a flat fee per transaction in Fee Investments based on the type of security involved (hereinafter referred to as "Processing Fee"). Commissions will be charged on the sale of any investments which are Fee Exempt Investments, with the exception of the sale of any securities originally purchased as new or secondary offerings.

| Schedule of Charges for Execution and Clearing of Transactions in Passport Fee Investments | |
| --- | --- |
| Security Type | Processing Fee |
| Stocks: Listed and OTC / Closed End and Exchange Traded Funds | $30.00 |
| Mutual Funds (applicable to purchases only) | $30.00 |
| Unit Investment Trust / Real Estate Investment Trust | $30.00 |
| Preferred Stock | $30.00 |
| Option Contracts | $50.00 |
| Bonds: Government, Corporate, Municipal, & Mortgage Backed | $50.00 |

40.     The Passport Agreement expressly notes (highlighting added) that "Processing Fees are not commissions, but are to defray the expenses incurred in facilitating the execution and clearing of Client's portfolio transactions."

Client understands the Investment Adviser Representative will not share in any Processing Fee. Processing Fees are not commissions, but are to defray the expenses incurred in facilitating the execution and clearing of Client's portfolio transactions. The actual expense incurred by RJA for any given transaction may be less than or greater than the Processing Fee. Additionally, Client understands that no-load funds may be transacted directly with the sponsoring fund organization with no Processing or Advisory Fee.

41.     In sum, Customers who signed the Passport Agreement agreed to: (1) pay, in lieu of commissions, an Advisory Fee on a quarterly basis based on a percentage of the account's "Fee Investments" overall value; and (2) pay a "Processing Fee" only to the extent necessary to reimburse Raymond James for the actual costs of executing and clearing transactions.

Correspondently, Raymond James agreed to: (1) accept as payment for its services an Advisory Fee based on a percentage of the total value of the Customer's account's "Fee Investments," "in lieu of" being paid any transaction based commission or remuneration; and (2) only charge Customers a fee in the amount necessary to reimburse it for any costs or expenses actually incurred, and directly related to, the execution and clearing of a Customer's transactions.

42.     By charging a "Processing Fee" per transaction which was far in excess of the actual cost associated with executing and clearing of Customers' transactions, Raymond James took what FINRA has described as a "disguised commission"—a per-transaction based remuneration in direct violation of both the spirit and express terms of the Passport Agreement. (*See* Exhibit "B").

43.     Additionally, and by virtue of its position as a broker-dealer, its professional skill and ability, and the level of confidence and care imposed upon other broker-dealers in similar positions, Raymond James owed its Customers a duty of care that, as FINRA puts it, requires nothing less than fair dealing.

44.     FINRA has made it clear that there can be no mark-up on a transaction-based fee; otherwise, it constitutes a firm commission.  *See e.g.*, FINRA's Sept. 7, 2011 News Release, "FINRA Fines Five Broker Dealers for Improper Handling Fees", attached hereto as Exhibit "B".

45.     Therefore, under both the spirit and express terms of the Passport Agreement *and* under the common law standard of care owed by Raymond James to its Customers, Raymond James could not charge a "Processing Fee" that exceeded its direct and actual costs in executing and clearing Customers' transactions.

46.     Upon information and belief, the actual cost and expenses incurred by Raymond James in executing and clearing trades for its customers is less than $5.00 – similar to that of comparable financial institutions.

47.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

## COUNT I
### (Breach of Contract)

48.     Plaintiff re-alleges paragraphs 1 through 47, above, as if fully set forth herein.

49.     Plaintiff brings this breach of contract claim on her own behalf, and on behalf of all Class Members who executed Raymond James' Passport Agreement under which they agreed to pay a Processing Fee, sometimes designated as "Misc.", "for transaction execution and clearing services," to cover the expenses incurred "in facilitating the execution and clearing of client's portfolio transactions," and who were charged a "Processing Fee," sometimes designated as "Misc.", at any time within the class period.

50.     Plaintiff (and Class Members) expressly agreed to reimburse Raymond James through payment of certain fees associated with the execution and clearing of trades by Raymond James, but only to the extent that Raymond James actually incurred expenses directly related to the execution and clearing of their trades. (*See* Exhibit "A").

51.     As set forth more fully above, the expense actually incurred by Raymond James "for transaction execution and clearing," and in "facilitating the execution and clearing of a client's portfolio transactions" is believed to be under $5.00, substantially lower than the amount Raymond James charged.

52.     Raymond James breached its Passport Agreement by charging Plaintiff (and Class Members) a "Processing Fee," often designated as "Misc.", that was not an authorized charge

under the Passport Agreement and that bore no reasonable relationship Raymond James' direct and actual costs in executing and clearing the "Fee Investment" transactions (which, upon information and belief, was less than $5.00).

53.    For example, Raymond James charged Plaintiff a "Processing Fee" (designated as "Misc.") as high as $30.00 when trading "Fee Investments," despite the fact that Raymond James' direct and actual cost in executing and clearing her transaction was under $5.00.  A true and correct copy of a trade confirmation dated December 20, 2011 wherein Plaintiff was charged a $30.00 "Misc." fee for an equity trade carried out on December 15, 2011, is attached hereto as **Exhibit "F".**[3]

54.    Plaintiff and the Class Members have performed all, or substantially all, of the obligations imposed on them under their Passport Agreements with Raymond James.

55.    Plaintiff and the Class have suffered damages as a result of Raymond James' breaches of the Passport Agreements.

**COUNT II**
**(Negligence)**

56.    Plaintiff re-alleges paragraphs 1 through 47, above, as if fully set forth herein.

57.    Plaintiff brings this negligence claim on her own behalf, and on behalf of all Class Members who were charged a "Processing Fee", often designated as "Misc." within four (4) years preceding the filing of this lawsuit.

58.    As a securities broker/dealer, Raymond James owed Customers a duty of care in accordance with the standard of care used by similar professionals in the community under

---

[3] Plaintiff's private information has been redacted.

similar circumstances.  That includes, but is not limited to, a duty of fair dealing and to act in the best interests of its Customers without regard to its own financial or other interests.

59.     Although exchange rules might not provide for a private right of action in tort, they do set forth the standards of care that are expected of broker-dealers such as Raymond James with regard to the imposition of fees.  One such example is FINRA Rule 2122 (formerly Rule 2430) described *supra*.

60.     Raymond James breached its duty, and the standard of care expected from similar professionals in the community under similar circumstances and as proscribed in FINRA Rule 2122, by charging an unreasonable and excessive "Processing Fee", often designated as "Misc.", that bore no reasonable relationship to its direct and actual costs in executing and clearing Customers' transactions.

61.     For example, Raymond James charged Plaintiff a "Processing Fee" (designated as "Misc.") as high as $30.00 when trading "Fee Investments," despite the fact that Raymond James' direct and actual cost in executing and clearing her transaction was under $5.00.  A true and correct copy of a trade confirmation dated December 20, 2011 wherein Plaintiff was charged a $30.00 "Misc." fee for an equity trade carried out on December 15, 2011, is attached hereto as Exhibit "F".

62.     The "Processing Fee" that Raymond James charged Plaintiff (and all Class Members) so grossly exceeded its direct and actual costs incurred in executing and clearing Customers' transactions that its markup reached as high as 1000% in some instances.  Raymond James simply retained the markup as an additional, unauthorized commission—in addition to the quarterly fee charged on the "Fee Investments" in the Passport Account.

63.     As a matter of law, it is unreasonable and a breach of Raymond James' duties owed to its Customers to charge a markup on a fee that is merely intended to reimburse Raymond James for its actual out of pocket expense associated with executing and clearing trades.

64.     As a direct and proximate result of the foregoing, Plaintiff (and all Class Members) have suffered damages.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of all other similarly situated, prays for relief and judgment as follows:

A.     Certifying the proposed Class and approving Plaintiff as class representative;

B.     Appointing Richman Greer, P.A., Herskowitz Shapiro PLLC, Sodhi Spoont PLLC, Hanley Law PA, and Blum Law Group as class counsel;

C.     Awarding Plaintiff and the Class damages in an amount to be proven at trial, along with costs, interest, and attorneys' fees; and

D.     Awarding any further relief the Court deems just and proper.

Dated: September 18, 2018.

Respectfully submitted,

By:     s/ *Joshua L. Spoont*
Eric M. Sodhi (FBN: 583871)
eric@sodhispoont.com
Joshua L. Spoont (FBN: 053263)
josh@sodhispoont.com
**SODHI SPOONT PLLC**
3050 Biscayne Blvd., Ste. 904
Miami, FL 33137
Tel: (305) 907-7573
Fax: (305) 675-6461

-and-

Manuel A. Garcia-Linares (FBN: 985252)
mlinares@richmangreer.com
Mark A. Romance (FBN: 021520)
mromance@richmangreer.com
**RICHMAN GREER, P.A.**
396 Alhambra Circle
North Tower, 14th Floor
Miami, Florida 33134
Telephone: (305) 373-4000
Facsimile: (305) 373-4099

-and-

Lyle E. Shapiro (FBN: 0120324)
Lyle@hslawfl.com
**HERSKOWITZ SHAPIRO, PLLC**
Two Datran Center
9130 S. Dadeland Blvd., Suite 1609
Miami, Florida 33156
Tel: (305) 423-1986

-and-

Sara E. Hanley (FBN: 107508)
hanley@finralawyer.org
**HANLEY LAW PA**
3200 Tamiami Trail N. #200
Naples, Florida 34103
Tel: (239) 649-0050

-and-

Darren C. Blum (FBN: 087173)
blum@stockattorneys.com
**BLUM LAW GROUP**
110 E. Broward Blvd.
Suite 1700
Ft. Lauderdale, Florida 33301


*Attorneys for Jyll Brink, on her own behalf
and on behalf of those similarly situated.*

**CERTIFICATE OF SERVICE**

I HEREBY certify that on September 18, 2018, the foregoing document was served via

CM/ECF e-mail on all counsel of record or pro se parties identified on the attached Service List.

By:___  s/ *Joshua L. Spoont*_____
        Joshua L. Spoont

**SERVICE LIST**

Samuel W. Braver, Esq.
G. Calvin Hayes, Esq.
Buchanan Ingersoll & Rooney PC
401 E. Jackson St., Suite 2400
Tampa, FL 33602
braversw@bipc.com
calvin.hayes@bipc.com

Matthew C. Pilsner, Esq.
Buchanan Ingersoll & Rooney, PC
One Oxford Centre,
301 Grant Street, 20th Floor
Pittsburgh, PA 15219 -1410
matthew.pilsner@bipc.com
*Attorneys for Defendant*

Manuel A. Garcia-Linares, Esq.
Mark A. Romance, Esq.
Richman Greer, P.A.
396 Alhambra Cir.
North Tower, 14th Fl.
Miami, FL 33134
mlinares@richmangreer.com
mromance@richmangreer.com
*Attorneys for Plaintiff*

Darren Blum, Esq.
Blum Law Group
110 E. Broward Blvd., Suite 1700
Ft. Lauderdale, FL 33301
blum@stockattorneys.com
*Attorneys for Plaintiff*

Sara E. Hanley, Esq.
Hanley Law PA
3200 Tamiami Trail N. #200
Naples, FL 34103
hanley@finralawyer.org
*Attorneys for Plaintiff*

Lyle E. Shapiro, Esq.
Herskowitz Shapiro, PLLC
Two Datran Center
9130 S. Dadeland Blvd., Suite 1609
Miami, FL 33156
Lyle@hslawfl.com
*Attorneys for Plaintiff*