UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60334-CIV-DIMITROULEAS

JYLL BRINK, on her own behalf,
and on behalf of those similarly situated,

    Plaintiff,

vs.

RAYMOND JAMES & ASSOCIATES, INC.,

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court upon Defendant Raymond James & Associates, Inc. ("Defendant" or "RJA")'s Motion for Summary Judgment [DE 51]. The Court has carefully considered the Motion, Plaintiff Jyll Brink ("Brink" or "Plaintiff")'s Response [DE 66/69], Defendant's Reply [DE 80/82], Defendant's statement of facts and Plaintiff's opposition thereto [DE's 52, 67/70], the evidence submitted in the record, arguments by counsel at the October 5, 2018 hearing, and is otherwise fully advised in the premises.

**I. BACKGROUND**

On February 17, 2015, Plaintiff Jyll Brink, on her own behalf and on behalf of those similarly situated (collectively, the "Customers" or "putative Class Members"), filed the instant action against Defendant RJA. A First Amended Class Action Complaint was filed on September 18, 2018. *See* [DE 124]. Plaintiff asserts that RJA Customers were charged an unauthorized and unreasonable "Processing Fee," sometimes labelled as a "Misc. Fee," by RJA when it executed trades for these Customers in their "Passport Investment Account Program"

(hereinafter the "Passport Account") – RJA's commission free based account.  Plaintiff claims that, despite the fact that the Passport Agreement expressly provides that "Processing Fees are not commissions," in fact, "the Processing Fee charged by Raymond James contained up to a 1000% mark-up for profit in some instances (and a significant mark-up in all instances), and as such, was transaction based remuneration to Raymond James – an unauthorized commission in an account that is supposed to be commission free." *See* [DE 124].

Plaintiff alleges two claims against RJA pertaining to the processing fee:  a claim for breach of contract (Count I) and a claim for negligence (Count II).

Defendant now moves for summary judgment as to both claims.  Defendant argues that Plaintiff's claims for breach of contract and negligence fail under Florida's voluntary payment doctrine because Plaintiff voluntarily, and without protest, paid RJA the Processing Fees at issue. Defendant contends that Plaintiff's negligence claim also fails because it is actually a claim under a private exchange rule that does not grant a private right of action.

## II.  STANDARD OF REVIEW

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable'

or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### III.  DISCUSSION

In its summary judgment motion, Defendant submits that there are no disputed issues of material fact and it is entitled to summary judgment in its favor as to both claims.  Defendant argues that Plaintiff's claims for breach of contract and negligence fail under Florida's voluntary payment doctrine because Plaintiff voluntarily, and without protest, paid RJA the Processing Fees at issue.  Defendant also contends that Plaintiff's negligence claim fails because it is actually a claim under a private exchange rule that does not grant a private right of action. The Court will address these arguments in turn.

> I.       *Whether Florida's Voluntary Payment Doctrine Bars Plaintiff's Claims*

Plaintiff's claims that RJA beached the Passport Agreement every time it charged its Passport Account Customers a Processing Fee per transaction which was far in excess of the

actual costs associated with executing and clearing of Customer's transactions, *i.e.*, by taking what amounts to a "disguised commission."

In its June 29, 2015 Order Denying Motion to Dismiss, to Strike, and for More Definite Statement, the Court found that Plaintiff sufficiently stated a claim for breach of contract. *See* [DE 27]. The Court explained as follows:

> RJA argues that Plaintiff fails to specify a provision of the parties' contract that RJA allegedly breached, that no provision exists in the Passport Agreement that RJA actually breached under the facts alleged in the Complaint, and that the Passport Agreement's express terms directly contradict Plaintiff's offered interpretation of the parties' contract.
>
> The Court disagrees. Construing the contract between RJA and the Customers as a whole, as the Court must, *see, e.g., Novoneuron Inc. v. Addiction Research Inst., Inc.*, 326 Fed. Appx. 505, 508 (11th Cir. 2009) ("Courts must construe contracts in such a way as to give reasonable meaning to all provisions, rather than leaving part of the contract useless"), the Court determines that RJA was contractually prohibited from charging a *de facto* per-transaction commission to customers who specifically opted to trade in RJA's commission-free Passport Accounts. *See also Slater v. Energy Services Group Intern., Inc., 634 F.3d 1326, 1330 (11th Cir. 2011)* ("The court must look at the contract as a whole, the parties, and the purpose of the agreement to best determine the intent of the parties in interpreting the agreement."). Moreover, to the extent that there is any ambiguity as to whether the parties' contract would allow RJA to charge, in the commission-free Passport Accounts, a Processing Fee per transaction which was far in excess of the actual costs associated with executing and clearing of Customers' transactions, the Court would construe any such ambiguity against RJA, as the drafter. *See Sanchez-Knutson v. Ford Motor Co.*, 52 F.Supp.3d 1223, 1232 (S.D. Fla. 2014) (citing *Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1232 (11th Cir.1985)).

[DE 27] at pp. 5-6.

RJA, having failed to convince the Court that Plaintiff has not presented a valid breach of contract claim, now argues that Plaintiff is prohibited from recovering for RJA's breach of the Passport Agreement pursuant to Florida's voluntary payment doctrine.[1]

---

[1] At oral argument, Defendant asserted the voluntary payment doctrine also applies to bar Plaintiff's negligence claim.

4

After a careful consideration of the doctrine and its application, and for the reasons explained *infra*, the Court determines that the voluntary payment doctrine does not bar Plaintiff's claims in this case because (1) the voluntary payment doctrine is not applicable unless the payor has "full knowledge of all the facts;" and/or (2) Fla. Stat. § 725.04 bars the application of the defense in this case.

"The voluntary payment doctrine provides that 'where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered.' " *Ruiz v. Brink's Home Sec., Inc.*, 777 So.2d 1062, 1064 (Fla. 2d DCA 2001) (quoting *City of Miami v. Keton*, 115 So.2d 547, 551 (Fla. 1959)). "The theory behind the doctrine is that if a party would resist an unjust demand of payment, he must do so at the threshold." *McDermott v. L.A. Fitness Int'l, LLC*, No. 211CV192FTM36DNF, 2012 WL 13098143, at *5 (M.D. Fla. Mar. 21, 2012) (citation omitted).

Under this doctrine, "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back, and this is true even though the claim thus paid was illegal." *Sanchez v. Time Warner, Inc.*, 1998 WL 834345, at *2 (M.D. Fla. Nov. 4, 1998) (quoting *McMullen v. Inland Realty Corp.*, 152 So. 740, 742 (Fla. 1933)). *See also Jefferson Co. v. Hawkins*, 2 So. 362, 365 (Fla. 1887) ("[M]oney voluntarily paid upon claim of right, with full knowledge of all the facts, cannot be recovered back merely because the party, at the time of payment, was ignorant, or mistook the law, as to his liability."). "It does not matter that the payment may have been made upon a mistaken belief as to the enforceability of the demand, or liability under the law, as long as payment is made with knowledge of the factual circumstances." *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289, 1290 (Fla. 1st DCA 2000). "Importantly, the doctrine has narrow application." *Markel*

5

*Ins. Co. v. Am. Safety Risk Retention Grp., Inc.*, No. 3:15-CV-240/RV-CJK, 2016 WL 10611374, at *4 (N.D. Fla. Aug. 3, 2016).

Defendant asserts that the criteria for the application of the voluntary payment doctrine are met her because Plaintiff's payments were voluntary, not under protest.  Defendant introduces evidence that RJA did not force Plaintiff to open a Passport Account, to sign the Passport Agreement, or to make trades that would incur Processing Fees, Plaintiff had choices, RJA afforded Plaintiff opportunities to voice concerns over any Passport Fees, and Plaintiff never protested.  Defendant contends that this case is akin to *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So. 2d 1289, 1290 (Fla. 1st DCA 2000), in which summary judgment for defendant based upon the voluntary payment doctrine was affirmed where plaintiffs had asserted a claim for unlawful penalties (and on appeal a claim for money obtained by imposition) regarding late payment charges plaintiffs paid pursuant to their cable bill, which they later decided were excessive and disproportionate to the actual costs which the appellee cable provider incurred with the late payments.  Defendant also relies on *Sanchez v. Time Warner, Inc.*, 1998 WL 834345, at *2 (M.D. Fla. Nov. 4, 1998), a case in which the plaintiff had alleged a claim for breach of contract and declaratory relief based upon the $6 late charge which was specified in her cable bill contract and which she had paid.  Plaintiff claimed that the charge should be deemed unenforceable because "it was grossly disproportionate to any damages that may be sustained by the late payment of any cable bill." *Id.* at *1.  The district court granted the defendant's motion to dismiss because the plaintiff's claims were barred by the voluntary payment doctrine, explaining that "it is clear from her Amended Complaint that Plaintiff knew failure to pay her bill within the time frame specified in Defendant's 'Payment Policy' would trigger the assessment of a $6.00 late charge." *Id.* at *2.  Defendant cites favorably to *City of*

*Miami v. Keton*, 115 So.2d 547, 551 (Fla. 1959), a class suit for reimbursement from city fines paid for traffic violations.  In ruling that the voluntary payment doctrine barred the class' claims to recover their previously paid fines, the court noted that "[T]here is no showing here that any of the payments were made under protest." *Id.* at 551.  Defendant also relies on *Easter v. City of Orlando*, 249 So. 3d 723, 730 (Fla. Dist. Ct. App. 2018), which held that the trial court properly considered the voluntary payment doctrine in determining that the class representative's claims differed from other proposed class members because the class representative paid his fine under protest after challenging the legal validity of the ordinance.  *See also Greene v. Alachua Gen. Hosp., Inc.*, 705 So.2d 953 (Fla. 1st DCA 1998) (affirming summary judgment against patient on grounds that patient's payment of hospital bills was paid without protest despite pressure of medical provider to pay).

The Court disagrees with Defendant's application of Florida's voluntary payment doctrine to this case.  Having considered the authority relied upon by both sides, and as explained below, the Court finds that the voluntary payment doctrine is inapplicable on the grounds that the voluntary payment doctrine only applies when the payor has "full knowledge of all the facts," and here Plaintiff and the Class Members could not have had "full knowledge" that the Processing Fee was a hidden commission in violation of the express terms of the parties' Passport Agreement.[2]

Where, as here, a plaintiff makes the allegedly excessive payments to a defendant without the knowledge of the factual circumstances rendering them excessive or illegal, the voluntary payment affirmative defense does not apply.  Recently, in *Cox v. Porsche Fin. Servs., Inc.*, No. 1:16-CV-23409, 2018 WL 4404070 (S.D. Fla. Aug. 30, 2018), Judge Gayles denied a defendant's motion for summary judgment based on the voluntary payment doctrine because of a

---

[2] *See* [DE 27] (Order Denying Motion to Dismiss, to Strike, and for More Definite Statement) at pp. 5-6.

factual dispute regarding the plaintiff's knowledge of the factual circumstances, explaining as follows:

> Here, as described above, there is a genuine dispute whether Plaintiff entered into the lease deal with "knowledge of the factual circumstances." Plaintiff has adduced competent evidence that he did not, namely his testimony that he did not know at the time of entering his lease that the application of his $25,000 as cash resulted in higher payments than if it was credited as a trade-in against the capitalized cost. While Defendants attest that Plaintiff knew the deal he was entering, Plaintiff testified that he only learned of the factual circumstances known to Defendants after he paid. On the evidence adduced, Defendants have failed to demonstrate entitlement to summary judgment on this affirmative defense.

2018 WL 4404070, at *12.  Similarly, Plaintiff introduces evidence that she did not have any knowledge, let alone full knowledge, that the Processing Fee was greatly in excess of the actual costs associated with RJA executing and clearing her transactions, and she did not agree to pay hidden commissions, which were actually *precluded* by the terms of the Passport Agreement, which represents that "Processing Fees are not commissions."  *See Maor v. Dollar Thrifty Auto. Grp., Inc.*, 303 F. Supp. 3d 1320, 1326–27 (S.D. Fla. 2017) (voluntary payment doctrine not supported where plaintiff alleged that "at the time of his voluntary payment of the administrative fee—he did not know that the fee was mostly retained by [defendant] as profit, instead of being used to cover the costs of toll processing, because those facts were 'secret' and 'undisclosed.'"); *Southern Wind Aviation, LLC v. Cessna Aircraft Co.*, No. 612CV1376ORL22DAB, 2014 WL 12570958, at *12 (M.D. Fla. July 15, 2014) (rejecting voluntary payment doctrine where "Defendant did not provide any evidence to show that Plaintiffs voluntarily paid the sums Defendant charged knowing that they were excessive. To the contrary, Plaintiffs have asserted that they were overcharged the Defendant's service and that they discovered the overcharges after retaining an analyst to review past invoices."); *Carrero v. LVNV Funding, LLC*, No. 11-62439-CIV, 2014 WL 6433214, at *6 (S.D. Fla. Oct. 27, 2014) ("[T]he voluntary payment

doctrine requires the party asserting it to show that the person who made the payment had *full knowledge of the relevant facts, including allegedly wrongful conduct*) (emphasis added); *McDermott v. L.A. Fitness Int'l, LLC*, No. 211CV192FTM36DNF, 2012 WL 13098143, at *5 (M.D. Fla. Mar. 21, 2012) (denying motion to dismiss on voluntary payment doctrine grounds where complaint was unclear as to whether plaintiff made allegedly excessive payments with knowledge that they were excessive or illegal); *In re NationsRent Rental Fee Litig.*, 2008 WL 11333813, at *2 (S.D. Fla. Jan. 3, 2008) (rejecting voluntary payment doctrine where plaintiffs were allegedly unaware that the "Environmental Charge" they contractually agreed to pay would not be used for "environmental-related" activities, therefore "Plaintiffs did not pay the Environmental Charge 'with knowledge of the facts' and the doctrine is therefore inapplicable"); *Ruiz v. Brink's Home Sec., Inc.*, 777 So. 2d 1062, 1064 (Fla. 2nd DCA 2001) (voluntary payment defense did not apply where the plaintiffs had contractually agreed to pay defendant the cost Brink's incurred for the payment of property tax on the homeowner's security system, but did not voluntarily pay the sums Brink's charged knowing that they were in excess of the actual tax imposed on Brink's).

Alternatively, and as an independent ground for denying Defendant's motion for summary judgment pursuant to Florida's voluntary payment doctrine, the Court finds this defense is barred in the instant case pursuant to Section 725.04, Florida Statutes which curtailed and created an exception to the voluntary payment doctrine. Specifically, Section 725.04 provides that:

> When a suit is instituted by a party to a contract to recover a payment made pursuant to the contract and by the terms of the contract there was no enforceable obligation to make the payment or the making of the payment was excused, the defense of voluntary payment may not be interposed by the person receiving payment to defeat recovery of the payment.

9

Fla. Stat. § 725.04.

In *Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No. 5:05CV260 OCGRJ, 2007 WL 1114045, at *3 (M.D. Fla. Apr. 12, 2007), the district court attempted to reconcile case law applying this statute with seemingly disparate results, holding as follows:

> The simple meaning of § 725.04 is that the voluntary payment doctrine cannot be used as a defense to payment in Florida where, as here, a party seeks to recover monies paid under a contract, the terms of which turn out to be unenforceable. Claims for monies paid outside the terms and scope of the contract continue to be subject to the voluntary payment doctrine. Any other interpretation would make § 725.04 meaningless and there would have been no reason for the codification of this limitation of the voluntary payment doctrine.

*Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No. 5:05CV260 OCGRJ, 2007 WL 1114045, at *3 (M.D. Fla. Apr. 12, 2007).  Further, as Judge Cohn explained in *Dear v. Q Club Hotel, LLC*, No. 15-60474-CIV, 2016 WL 7477734 (S.D. Fla. Dec. 8, 2016), the situation presented in this case is the type which bars the voluntary payment defense:

> Section 725.04 applies to claims to recover overpayments when the parties dispute payments that allegedly exceeded or did not fall under terms or categories expressed in the parties' contract. *See, e.g., Sundance*, 581 F. Supp. 2d at 1225 (holding that § 725.04 barred application of voluntary payment defense where additional prepayment amount under defendants' interpretation of contract provision was not enforceable obligation); *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 249 F. Supp. 2d 703, 710–12 (D. Md. 2003) (holding that § 725.04 barred application of voluntary payment defense to payment of excessive commissions); *Saglio v. Chrysler First Commercial Corp.*, 839 F. Supp. 830, 834–35 (M.D. Fla. 1993) (applying § 725.04 to preclude application of voluntary payment doctrine in suit to recover money improperly paid under a guaranty).
>
> This is precisely the type of overpayment that the Class Members seek to recover. Dear does not dispute that Shared Costs were owed to Q Club. He instead alleges that the amounts charged as Shared Costs exceeded the costs attributable to the easement, and therefore were not an enforceable obligation under the Declaration. Based on these allegations, Section 725.04 likely will bar the application of Q Club's voluntary payment defense.

2016 WL 7477734, at *5.

The Court disagrees with Defendant's contention that Fla. Stat. §725.04 is inapplicable because that statute only bars the defense where the contract between the parties creates no enforceable obligation and here Plaintiff was obligated under the Passport Agreement to pay the Processing Fees.[3] Rather, in this case, in the same vein as the district courts' analyses *supra* in *Taylor, Bean & Whitaker* and in *Dear*, § 725.04 precludes RJA from raising the voluntary defense because the Passport Agreement prohibited RJA from charging a *de facto* commission as a "Processing Fee," as this Court previously recognized in its Order Denying Motion to Dismiss, to Strike, and for More Definite Statement. *See* [DE 27] at pp. 5-6.

Accordingly, Defendant's motion for summary judgment based on Florida's voluntary payment doctrine shall be denied.

> II.  Whether Plaintiff's Negligence Claim Fails because FINRA Rule 2122 does Not Afford Plaintiff a Private Right of Action

In Count II, Plaintiff alleges a claim against RJA for negligence. Plaintiff claims that the Processing Fee at issue in this case violates not only the Passport Agreement, but also RJA's independent common law duty to Plaintiff and the Class. A negligence claim under Florida law requires (1) a duty; (2) breach of that duty; (3) causation; and (4) harm. *Florida Dept. of Corrections v. Abril*, 969 So.2d 201, 205 (Fla. 2007) ("[A] plaintiff must establish that the

---

[3] *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653, 655 (Fla. 5th DCA 1996), upon which Defendant relies, is fundamentally distinguishable. In *Hall*, the court held that § 725.04 did not prohibit the application of the voluntary payment doctrine based upon an equitable claim for money had and received (not a breach of contract claim) brought by former hospital patients to recover overcharges that they had paid on their hospital bills. "These obligations are plainly not unenforceable by the terms of the contract, as required by the statute." *Id.* at 658. In *Hall*, there was no contractual provision, statute or common law, or other authoritative source that limited the hospital's ability to charge the amounts on its "Master Charge List." In contrast, in this case, the Passport Agreement unequivocally required Plaintiff to pay Processing Fees that were "not commissions," but were instead supposed to be for "transaction execution and clearing services."

11

defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages.").

In its June 29, 2015 Order Denying Motion to Dismiss, to Strike, and for More Definite Statement, the Court found that Plaintiff sufficiently stated a negligence claim apart from her claim for breach of contract. *See* [DE 27]. The Court explained as follows:

> . . . Plaintiff has sufficiently alleged that RJA owed Plaintiff and the class a duty of care in accordance with the standard of care used by similar professionals in the community, apart from the contract. *See, e.g.*, *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 (11th Cir. 1987) ("The law is clear that a broker owes a fiduciary duty of care and loyalty to a securities investor"); *Surety Bank v. Dunbar Armored, Inc.*, 2015 WL 845590, at *6 (S.D. Fla. 2015) ("While there is some logic to this position, on closer examination it would appear that the conduct described in the complaint raises issue as to whether an armored car service owes its customers, in this case, the Bank, a duty to use reasonable care in the protection of property delivered to it for delivery to another which exists independently of any contractual obligations it may have assumed."). *See also Remington v. Newbridge Securities Corp.*, 2013 WL 4496504 (S.D. Fla. Aug. 20, 2013) (denying motion to dismiss breach of contract and negligence claims against securities broker-dealer in case where putative class members alleged that broker-dealer charged unauthorized, excessive handling fees to customers during each trade execution).
>
> In sum, Plaintiff has stated a sufficient claim for negligence.

[DE 27] at pp. 6-7 (footnote omitted). The Court also explained in its Order that, as the putative class period spans the effective date of both FINRA Rule 2122 and NASD Rule 2430, the relevant standard of care is reflected, in part, in these rules. *See Remington v. Newbridge Securities Corp.*, 2013 WL 4496504, *4 ("While the Regulatory Notice states that the rule is only applicable to fees unrelated to the execution of transactions, FINRA has actually applied the rule to the handling fees at issue. Moreover, the language of the rule does not limit its application to fees unrelated to the execution of transactions. Indeed, by its terms, it applies to "[c]harges, if any, for services performed." FINRA Rule 2430). *See* [DE 27] at p. 7, n.1.

Defendant now argues in its summary judgment motion that Plaintiff's negligence claim cannot proceed because it is merely a claim for a FINRA violation disguised as common law negligence and that FINRA Rule 2122 does not afford Plaintiff a private right of action.

In support of its contention that the negligence claim is a claim for a FINRA violation disguised as common law negligence, Defendant relies on "the time-tested adage: if it walks like a duck, quacks like a duck, and looks like a duck, then it's a duck.'" *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1359 (11th Cir. 2008) (citation omitted). Defendant contends that Plaintiff has showed nothing more, beyond the NASD and FINRA rules, to underpin the duty element of her negligence claim, thereby dooming it. Defendant points to Paragraph 8 in the Complaint's "Introduction":

> [A] broker/dealer has a duty of care to act in accordance with the standard of care used by other professionals in the community, including to charge customers a reasonable fee for its services. This duty is codified by FINRA Rule 2122 (formerly [NASD] Rule 2430) which requires "charges" to be "reasonable."

Defendant also contends that Plaintiff's allegations and exhibits to her complaint focus exclusively on violations of NASD Rule 2340 (now FINRA Rule 2122).

Defendant relies on three cases. In *Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015), the district court dismissed a negligence claim based upon a violation of a FINRA rule, holding as follows:

> As with plaintiff's fifth cause of action, which sounds in common law negligence, plaintiff claims that the investments were unsuitable and that Morrison breached the appropriate standard of care under FINRA Rule 2310(b)(2)(B), which sets out a standard of care for FINRA members when they are recommending purchases of interest in a "direct participation program." However, FINRA does not provide a private right of action, thus even if defendants violated FINRA rules, plaintiff cannot recover for negligence based on the alleged violation of FINRA Rule 2310(b)(2)(B).

*Fox*, 84 F. Supp. 3d at 245. In *Gallier v. Woodbury Fin. Servs., Inc.*, No. CIV.A. H-14-888, 2015 WL 1296351 (S.D. Tex. Mar. 23, 2015), the district court dismissed a third-party breach of contract claim brought by an investor alleging that defendants breached their contract with FINRA that required compliance with the FINRA rules. While the order stated in *dicta* that "[t]here is no private cause of action for violations of FINRA rules," *see id.* at * 6, the district court rejected the breach of contract claim because there were insufficient allegations of a contract itself, and there is no basis for plaintiff's claim to be a third-party beneficiary to such a contract. *See id.* at *7-8. Finally, in *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002), the Ninth Circuit Court of Appeals held that a plaintiff could not proceed on an FDCPA claim that was based on an alleged violation of a provision of the bankruptcy code for which there is no private right of action. The Ninth Circuit explained:

> To permit a simultaneous claim under the FDCPA would allow through the back door what Walls cannot accomplish through the front door—a private right of action. This would circumvent the remedial scheme of the Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtors' remedies for violating the discharge injunction to contempt.

*Walls*, 276 F.3d at 510.

Plaintiff responds that the Court should deny Defendant's summary judgment motion as to her negligence claim because, while Plaintiff's negligence claim cites to RJA's violation of NASD and FINRA rules as evidence of RJA's negligence, the common law standards of care that RJA breached exist on their own, independent of these rules. Plaintiff argues that, when read in its entirety, her negligence claim does not simply sue for a violation of FINRA Rule 2122/NASD Rule 2430, but rather, alleges that Defendant's failure to comply with FINRA/NASD rules is evidence that it breached its overriding duty of care – a duty to act in accordance with the standard of care used by like professionals in the community.

14

Plaintiff relies upon cases that have allowed rules from NYSE, NASD, and FINRA as evidence to establish negligence. In *Remington v. Newbridge Securities Corp.*, 2013 WL 4496504 (S.D. Fla. Aug. 20, 2013), plaintiffs alleged that defendant negligently breached its duty to act in the best interests of its customers by charging an excessive handling fee. In denying the defendant's motion to dismiss, the district court agreed with plaintiffs that the standard of care for broker-dealers such as defendant with regard to the imposition of fees is governed in part by FINRA Rule 2430, Charges for Services Performed and that FINRA Rule 2430 applied to the handling fees at issue in that case. *Id.* at *4. In *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 333 (5th Cir. 1981), *abrogated on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985), the Fifth Circuit held, in relevant part:

> Rather than creating a private cause of action for a violation of the NYSE and NASD rules, Judge Mahon merely allowed the jury to consider a violation of such rules as one of six factors in determining whether Miley's account had been excessively traded. A finding of excessive trading was, in turn, merely one of three elements comprising a violation of the federal securities laws. Moreover, these *NYSE and NASD rules are excellent tools against which to assess in part the reasonableness or excessiveness of a broker's handling of an investor's account.* It was both proper and beneficial for Judge Mahon to include a reference to the rules in this charge.

*Miley*, 637 F.2d at 333 (emphasis added). Other cases have held similarly. *See Javitch v. First Montauk Fin. Corp.*, 279 F.Supp.2d 931, 938 (N.D. Ohio 2003) ("First, the standard in the industry is reflected in the rules of both NASD and NYSE. While this Circuit has yet to opine whether a private cause of action exists relative to infringement of those rules, they have been deemed to be the standards of practice relative to this industry."); *Scott v. Dime Savings Bank*, 886 F.Supp. 1073, 1080–81 (S.D.N.Y. 1995) (violation of NASD "suitability rule" is evidence of a broker's negligence); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cheng*, 697 F. Supp.

1224, 1227 (D.D.C. 1988) (same); *Lange v. H. Hentz & Co.*, 418 F.Supp. 1376 (N.D. Tex. 1976) (NASD rules can be used as evidence as to standard of care in the stock brokerage industry).

Based upon the Court's analysis of the cases proffered by both sides, the Court agrees with Defendant that Plaintiff's negligence claim will ultimately fail if it is based solely and exclusively on a violation of a FINRA Rule. However, at this stage of the litigation, Plaintiff has adduced sufficient evidence to withstand summary judgment on this claim, in the form of proffered expert testimony on the standard of care owed by similar professionals in the community of broker-dealers to customer/account holders such as Plaintiff, which include the duties to accurately disclose the fees and services for which Plaintiff was being charged, to not misrepresent the cost of service provided to Plaintiff, and to not compute the actual cost after the fact for purposes of trying to justify an improper and unauthorized charge.

Accordingly, Defendant's motion for summary judgment on the negligence claim shall be denied.

## IV.  CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment [DE 51] is hereby **DENIED.**
2. The hearing on Plaintiff's Motion for Class Certification [DE 45] remains scheduled for 2:00 P.M. on Friday, October 19, 2018, in Courtroom 205B at the U.S. Courthouse, 299 E. Broward Boulevard, Fort Lauderdale, Florida.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 9th day of October, 2018.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of record