**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

JYLL BRINK, on her own behalf, and on
behalf of those similarly situated,

      Plaintiff,                          CASE NO.: 15-CV-60334-
                                           DIMITROULEAS/SNOW

v.

RAYMOND JAMES & ASSOCIATES, INC.,

      Defendant.
_____/

CALEB WISTAR and ERNEST MAYEAUX,
on their own behalf, and on behalf of those
similarly situated,

      Plaintiffs,                     CASE NO.: 16-CV-60284-
                                           DIMITROULEAS/SNOW

v.

RAYMOND JAMES FINANCIAL
SERVICES, INC., and RAYMOND JAMES
FINANCIAL SERVICES ADVISORS, INC.,

      Defendants.
_____/

**PLAINTIFFS' MOTION FOR AWARD OF**
**ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

Plaintiffs, JYLL BRINK, CALEB WISTAR, and ERNEST MAYEAUX ("Plaintiffs" or "Class Representatives"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 23(h), move for an award of attorneys' fees, costs, and incentive awards, and in support state:

## I. INTRODUCTION

These matters collectively resulted in years of hard-fought litigation, two in-person mediation sessions, extensive pre-trial motion practice, extensive written discovery, production and review of hundreds of thousands of documents, multiple depositions, and two appeals. Pursuant to the Stipulation of Settlement, Plaintiffs and Class Counsel have secured a settlement that provides for $15,000,000.00 in monetary relief. Additionally, Defendants[1] have agreed to significant non-monetary relief in the form of modification of disclosures made to customers such that the nature of the fees charged by Defendants is fully disclosed in the future.

The relevant factors for an award of attorneys' fees support the requested award in this case. First and foremost, the terms of the settlement are an excellent result for the Classes, ending years of litigation and uncertainty for Class Members. Class Counsel also spent more than 4436.6 hours of time and advanced $261,491.85 in costs, and did so facing significant uncertainty as to the ultimate outcome of these cases. Nevertheless, throughout the course of the litigation, Class Counsel persisted in diligently prosecuting these actions, which ultimately resulted in the relief that was received for the Classes.

---

[1] Defendants are referred to herein as: Raymond James & Associates, Inc. ("RJA"), Raymond James Financial Services, Inc. ("RJFS"), Raymond James Financial Services Advisors, Inc. ("RJFSA"), and collectively "Defendants" and "Raymond James."

The Class Representatives, who risked personal exposure but stepped forward to carry the mantle for the potential class members, also provided significant assistance to the litigation. Jyll Brink assisted with pre-suit factual development, responses to written discovery, attended hearings, sat for a deposition, and attended two mediation sessions. Likewise, Caleb Wistar and Ernest Mayeux assisted with discovery responses, attended mediation, and were ready and willing to be deposed had the latest mediation resulted in an impasse.

Accordingly, Class Counsel now moves for an award of attorney's fees, costs, and incentive awards to the Class Representatives.

## II. PROCEDURAL HISTORY

### A. The *Brink* Matter

Jyll Brink filed her Complaint against RJA on February 17, 2015. [Complaint, D.E. 1.] The Complaint asserted a claim for breach of contract and a claim for negligence. Ms. Brink alleged that RJA charged its customers a Processing Fee and/or Miscellaneous Fee that far exceeded its actual costs to execute and clear the trades. Ms. Brink alleged that this practice was a breach of the terms of the Passport Agreements and violated RJA's duties to its customers.

RJA filed a motion to dismiss the Complaint, which was denied by the Court on June 29, 2015. [Order Denying Motion to Dismiss Complaint, D.E. 27.] Thereafter, RJA filed its Answer and Affirmative Defenses on July 13, 2015. [Answer and Affirmative Defenses, D.E. 34.] RJA then moved to dismiss the Complaint, arguing that the claims were pre-empted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). [Motion to Dismiss, D.E. 89.] The Court granted that motion on June 6, 2016, dismissing the case. [Order Granting Motion to Dismiss for Lack of Subject Matter Jurisdiction, D.E. 99.] Ms. Brink appealed the order. The United States Court of Appeals for the Eleventh Circuit reversed and remanded the case.

On September 18, 2018, Ms. Brink filed her First Amended Complaint.  [First Amended Complaint, D.E. 124.]   RJA then filed its Answer and Affirmative Defenses to the First Amended Complaint on October 1, 2018.  [Answer and Affirmative Defenses, D.E. 128.]

Ms. Brink filed her motion for class certification on February 5, 2016.  [Motion for Class Certification, D.E. 45.]  The Court granted the motion on October 18, 2018.  [Order Granting Motion for Class Certification, D.E. 133.]   RJA then filed a petition seeking to file an interlocutory appeal of this order with the Court of Appeals for the Eleventh Circuit, which was granted.  Prior to reaching a settlement, the Parties briefed the appeal, except settlement occurred prior to the day RJA's reply brief was due.

After the class was certified, the Court directed that notice be sent to Class Members. [Order Approving of Proposed Class Notice, D.E. 144; Order Granting Motion for Approval of a Revised Class Notice, D.E. 147.]  RJA provided a class list to Ms. Brink's counsel consisting of over 28,000 names and addresses. [Notice Regarding Status of Sending Class Notice, D.E. 157.] The claims administrator has since mailed notice to nearly all those individuals on the class list provided by RJA.  [*Id.*]

Throughout the *Brink* matter, the Parties engaged in extensive discovery, including the production and review of hundreds of thousands of pages of documents from themselves and third parties; retained experts and other consultants who performed extensive work; obtained reports from the expert witnesses; and conducted depositions of the Parties and their expert witnesses.  Additionally, the Parties engaged in extensive and vigorously contested briefing and hearings on the numerous motions to dismiss, and spent considerable time litigating the appeal and oral argument before the Eleventh Circuit regarding subject matter jurisdiction, as well as litigation related to RJA's motion for summary judgment, and Ms. Brink's motion for class

certification, which also involved an appeal that was fully briefed, except for RJA's reply, and is currently pending and stayed pending final approval of this class action settlement.

### B.  The *Wistar* Matter

Caleb Wistar and Ernest Mayeaux filed their Complaint against RJFS and RJFSA on February 11, 2016.  [Complaint, D.E. 1.]   Like the claims brought in the *Brink* matter, Plaintiffs in the *Wistar* matter brought a breach of contract and negligence claim, alleging that RJFS and RJFSA charged Processing Fees and/or Miscellaneous Fees that far exceeded their actual costs to execute and clear trades.   Plaintiffs alleged that this practice was a breach of the terms of the Passport Agreements and violated the defendants' duties to their customers.

On March 29, 2016, RJFSA moved to dismiss the Complaint, while RJFS answered the Complaint.  [Motion to Dismiss, D.E. 12; Answer and Affirmative Defenses, D.E. 13.]   Mr. Wistar and Mr. Mayeaux then filed a First Amended Complaint on April 19, 2016.  [First Amended Complaint, D.E. 21.]   RJFS and RJFSA then moved to dismiss the First Amended Complaint on May 9, 2016.  [Motion to Dismiss, D.E. 26.]  The case was then stayed pending the outcome of the jurisdictional appeal in the *Brink* matter.  [Order Granting Motion to Stay, D.E. 32.]   The case was reopened on July 24, 2016.  [Order Reopening Case, D.E. 34.]  Mr. Wistar and Mr. Mayeaux filed a Second Amended Complaint on August 8, 2016.  [Second Amended Complaint, D.E. 38.]   RJFS and RJFSA then moved to dismiss the Second Amended Complaint [D.E. 49], which was denied by the Court.  [Order Denying Motion to Dismiss, D.E. 69.]   RJFS and RJFSA then filed their Answer and Affirmative Defenses to the Second Amended Complaint.  [Answer and Affirmative Defenses to Second Amended Complaint, D.E. 70.]

Throughout the *Wistar* matter, the Parties engaged in extensive and vigorously contested briefing on the numerous motions to dismiss, and they otherwise engaged in extensive discovery,

including the production and review of documents both from and independent of the *Brink* matter.

### C.  The Settlement

Earlier in the *Brink* case, the Parties participated in a full day of mediation with Joel Levine which resulted in an impasse, and then closer to trial convened a two-day mediation session in both cases with Glenn Waldman on April 4-5, 2019, at which the parties successfully reached a global settlement of both cases.  The Parties then entered a Stipulation of Settlement memorializing the settlement terms, which is attached as Exhibit "A" to the Joint Motion for Preliminary Approval of Class Action Settlement and for Certification of the Settlement Subclasses.   [Joint Motion for Preliminary Approval of Class Action Settlement and for Certification of the Settlement Subclasses, D.E. 179 at Exhibit "A."]

In the Stipulation, Defendants agree to pay $15,000,000.00 as a lump sum to provide recovery to all settlement Class Members for the Processing Fees and Miscellaneous Fees charged during the Class Period, after expenses, including administrative expenses, taxes and tax expenses, incentive awards, and attorney's fees and costs.  Once these expenses are accounted for, each settlement Class Member will receive a cash payment (via check) for his/her/its share of the Net Settlement Amount pursuant to the formula for allocating the Settlement Fund to Class Members.  No claim forms are required.  Each Class Member will receive a check without taking any action.

In addition to the cash payment, Defendants also agreed to revise the Passport Account Agreement terms and other disclosures and information provided thereafter to all current and existing Passport Account clients effective July 1, 2019, which revision will cure the deficiencies in the disclosures as alleged by the Plaintiffs.

Pursuant to the Stipulation of Settlement, Defendants take no position as to Class Counsel's request for fees, costs, and the incentive awards.

### III. CLASS COUNSEL SHOULD BE AWARDED REASONABLE FEES, COSTS, AND PLAINTIFFS THE REQUESTED SERVICE AWARD

For their extensive work, totalling 4436.6 hours of attorney and paralegal time over a four year period, Class Counsel seek an attorneys' fee award of $6,000,000.00 and reimbursement of $261,491.85 in costs incurred prior to settlement.  This attorneys' fee award represents 40% of the Common Fund, created pursuant to this opt-out settlement.   Class Counsel further request future expenses and Administrative Expenses be paid from the Common Fund.  This will amount to approximately $480,000.00 in costs to print and mail notice, maintain a website, maintain a telephone line for Class Members to call and receive additional information, and other Claims Administrator costs.

Additionally, the Court should approve a $75,000.00 incentive award to Jyll Brink and a $25,000.00 incentive award to each of the other two Class Representatives, Caleb Wistar and Ernest Mayeaux.  These awards will compensate the respective Class Representatives for their extensive work throughout the cases, as well as the risk of costs judgments that each of these individuals faced should the Defendants have prevailed.

#### A.  The Court Should Award Class Counsel Fees and Expenses

Pursuant to Federal Rule of Civil Procedure 23(h), the Court may award reasonable attorneys' fees and non-taxable costs that are authorized by law or the parties' agreement.  Fed. R. Civ. P. 23(h).  The United States Court of Appeals for the Eleventh Circuit has further explained that "Attorneys in a class action in which a Common Fund is created are entitled to compensation for their services from the Common Fund, but the amount is subject to court approval." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).  Fees should be awarded as a reasonable percentage of the Common Fund. *See id*. at 773-74.  Further,

"[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.* at 774. Generally speaking, the majority of fee awards are in the 20% to 30% range, but awards higher than this range are routinely awarded, and a 50% award may be an upper limit. *Id.* at 774-75.

The *Camden I* court adopted several factors set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974) to be considered when determining the appropriate fee award. *Camden I*, 946 F.2d at 772 n.3. These factors are:

(1) the time and labor required;
(2) the novelty and difficulty of the questions involved;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the client;
(12) awards in similar cases.

*Id.*

The *Camden I* court explained that additional factors may also be relevant to the award:

[T]he time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action. In most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration. In order to facilitate this court's review of the reasonableness of attorneys' fees calculated as a percentage of a common fund, the district court should articulate specific reasons for selecting the percentage upon which the attorneys' fee is based. The district court's reasoning should identify all factors upon which it relied and explain how each factor affected its selection of the percentage of the fund awarded as fees.

*Id.* at 775.

Considering each of the factors that are relevant to this case, the fee award is appropriate and supported.

<strong><em>i.     The Time and Labor Required</em></strong>

The cases have required a large amount of resources to prosecute and have been pending for several years. The *Brink* matter was filed in 2015, and the *Wistar* matter was filed in 2016. As set forth in the attached declaration, Class Counsel collectively devoted 4436.6 hours of attorney time and paralegal time to the cases. *See* Manuel Garcia-Linares Declaration at ¶ 7, a copy of which is submitted herewith as Exhibit "A";   Eric Sodhi Declaration at ¶ 3, a copy of which is submitted herewith as Exhibit "B"; Sarah Hanley Declaration at ¶ 3, a copy of which is submitted herewith as Exhibit "C"; Lyle Shapiro Declaration at ¶ 3, a copy of which is submitted herewith as Exhibit "D";  Darren Blum Declaration at ¶ 3, a copy of which is submitted herewith as Exhibit "E."

These cases involved many hours of extensive motion practice, including multiple motions to dismiss, a motion for summary judgment, and briefing of the class certification issue. The Parties also engaged in extensive discovery, including the production and review of hundreds of thousands of pages of documents from themselves and third parties, retained experts and other consultants who performed extensive work, obtained  reports from the expert witnesses, and conducted depositions of the Parties and their expert witnesses.

Class Counsel further spent a considerable amount of time handling two appeals. The first arose after the Court granted a motion to dismiss based upon lack of subject-matter jurisdiction. The Court then granted class certification in the *Brink* matter, prompting Defendants to seek an interlocutory appeal, requiring significant time to brief. The United States Court of Appeals for the Eleventh Circuit then granted the petition, giving rise to additional

substantive briefing that was completed, except for Defendants' reply that was due shortly after the time the settlement was reached.

### ii.   The Novelty and Difficulty of the Questions Involved

Besides one previous case against a different broker-dealer involving far fewer customers, which was handled by some of the Class Counsel in this case, Class Counsel is unaware of any other lawsuits brought anywhere in the nation dealing with the issues presented here; *to wit*, whether the Defendants' breached their contractual obligations and acted negligently by charging a processing fee for trades that included a fee for the Defendants.  The cases are therefore bellwether cases involving novel and untested legal theories.

Moreover, as with most class actions, this action is complex, *Cotton*, 559 F.2d at 1331 ("[C]lass action suits have a well deserved reputation as being most complex."), and litigating these cases through trial and subsequent appeals would undoubtedly be time-consuming and expensive.   The cases also involved unique issues related to class certification, as evidenced by the Defendants' petition for interlocutory appeal of the Court's class certification order that was granted, which further demonstrates this factor weighs in favor of a fee award that is on the higher end of the acceptable range.  *See, e.g.*, *Amason v. Pantry, Inc.*, No. 7:09-CV-02117-RDP, 2014 WL 12600263, at *3 (N.D. Ala. July 3, 2014) ("Likewise, the case raised complex issues related to standing and class certification, infusing it with an air of legal difficulty and uncertainty. Under such circumstances, a fee award in excess of the benchmark is warranted.").

Likewise, the Court's subject-matter jurisdiction was uncertain.  The Court granted Defendants' motion to dismiss in which Defendants argued that the case was pre-empted by SLUSA.  That decision was later reversed by the United States Court of Appeals for the Eleventh Circuit, demonstrating the complexity and difficulty of resolving that issue.

### iii. The Skill Requisite to Perform the Legal Services Properly and the Experience, Reputation, and the Ability of Class Counsel

The complex issues in this case required multiple skilled lawyers that could handle various tasks, ranging from extensive briefing, discovery, oral argument and hearings, and appeals.  Further, as previously noted by the Court when granting class certification of the *Brink* matter, "Plaintiff's counsel has sufficient experience with class and complex litigation [to represent the class]."  [Order Granting Class Certification, D.E. 135 at 13.]

Class Counsel are indeed skilled at handling class actions as well as complex commercial litigation.   Day Pitney/Richman Greer, Herskowitz Shapiro, PLLC, Sodhi Spoont, PLLC, Hanley Law, P.A., and Blum Law Group are all firms comprised of highly competent and experienced litigators. Day Pitney/Richman Greer is a full service law firm with over 300 lawyers nationwide.   It has represented plaintiffs and defendants including Fortune 500 corporations in class actions and a plethora of other complex litigation.  It maintains a robust federal practice and has been appointed class counsel on numerous occasions in both federal and state court.  It is also very experienced in the defense of class actions, having handled many complex cases throughout the years in both federal and state court.  Further, Hanley Law, P.A. and Blum Law Group are nationally recognized securities plaintiffs' law firms, and the lawyers at Herskowitz Shapiro, PLLC and Sodhi Spoont, PLLC are accomplished litigators and former partners of Richman Greer, P.A., the predecessor firm to Day Pitney/Richman Greer.

The results obtained in these matters further evidence the skill, diligence, and experience of Class Counsel.  Despite the significant hurdles discussed above, the Parties settled with a substantial Common Fund being created as well as the non-monetary relief in the form of additional disclosures to Defendants' customers.

Moreover, the quality of Class Counsel and their achievement in this case is equally demonstrated by strength of their opponents.  Buchanan Ingersoll & Rooney P.C. is a reputable

law firm known for the skill of their attorneys.  This factor therefore further weighs in favor of the requested fee.

### iv.    The Customary Fee

Contingency fee awards are commonly between 30% to 40% of the recovery—meaning an award here of 40% falls squarely within the range of a contingency fee award with an individual client.  *See In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1366 n35 (S.D. Fla. 2011) (noting contingency fee awards are often 40% of the recovery); *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *14 (S.D. Fla. Jan. 31, 2008)( "In private litigation, 'attorneys regularly contract for contingent fees between 30% and 40% directly with their clients.'"); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) ("Plaintiffs['] request for approval of Class Counsel's 33% fee falls within the range of the private marketplace, where contingency-fee arrangements are often between 30 and 40 percent of any recovery.").  Accordingly, this factor also supports the fee award.

### v.    The Results Obtained for the Class

A primary factor for the Court to consider is the result obtained on behalf of the Class. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (explaining the "results obtained" is a crucial factor when determining a fee award); *Behrens v. Wometco Enterprises, Inc*., 118 F.R.D. 534, 548 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").   In determining the benefit obtained, both monetary and non-monetary relief should be considered.  *Poertner v. Gillette Co*., 618 F. App'x 624, 629 (11th Cir. 2015).  The results obtained here, including $15,000,000.00 for a Common Fund that will be distributed to Class Members, as well as non-monetary relief requiring Defendants to make further disclosures to their customers, are excellent.  On Plaintiffs' best day in Court, the greatest possible monetary award that could be expected might have been two to three times the amount

of the monetary settlement, which could only be obtained if Plaintiffs prevailed on appeal of the class certification issue and prevailed at trial of both cases.    This settlement is thus a superb result for the class because it alleviates the uncertainty of continued litigation and the allows Class Members to receive relief now rather than several years in the future.  *See George*, 369 F. Supp. 3d at 1379 (finding the results obtained by class counsel must be considered in light of the possibility of continued and uncertain litigation).

### vi.    Awards In Similar Cases

Courts have routinely awarded class counsel 33% or greater of a settlement fund in complex class actions such as this one.  *See Jernigan v. Protas, Spivok & Collins, LLC*, No. ELH-16-03058, 2017 WL 4176217, at *8 (D. Md. Sept. 20, 2017) (awarding 40% of settlement fund); *Chieftain Royalty Co. v. Laredo Petroleum, Inc*., No. CIV-12-1319-D, 2015 WL 2254606, at *1 (W.D. Okla. May 13, 2015) (approving an attorney fee award of 40% of the settlement fund plus costs); *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (awarding 40% of settlement fund in a Fair Labor Standards Act case); *Howes v. Atkins*, 668 F. Supp. 1021, 1024 (E.D. Ky. 1987) (awarding class counsel fees amounting to 40% of settlement fund).

Within the Eleventh Circuit, district courts "routinely approve fee awards of 30% or greater."  *Duque v. 130 NE 40th St., LLC*, No. 14-23965-CIV, 2016 WL 7442797, at *3 (S.D. Fla. Jan. 27, 2016); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1252 (S.D. Fla. 2016) (approving a fee award of 33%); *Waters v. Cook's Pest Control, Inc*., No. 2:07-CV-00394-LSC, 2012 WL 2923542, at *19 (N.D. Ala. July 17, 2012) (approving a fee award of 35%); *Moultry v. Cemex, Inc*., No. 8:07-cv-00453-MSS, Dkt. 145 (M.D. Fla. 2008) (awarding fee of 32.25% of common fund); *In re Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003) (awarding a fee of 35.5% of $310 million, including $6.5 million in

costs). Therefore, the requested fee here falls within the range of fee awards in other class actions.

### vii.    Class Counsel Took Substantial Risk in Prosecuting These Actions

As discussed above, these cases involve complex, novel issues that gave rise to two appeals, and substantial hurdles existed to obtain victory at trial in both cases. Most immediately, Plaintiffs would have to have prevailed in the appeal of the class certification order. Assuming the appeal was resolved in favor of Plaintiffs, the class certification issue would then need to be briefed in the *Wistar* matter, and then both cases would have to be tried after engaging in significant additional discovery as no depositions had been taken in *Wistar* at the time settlement was attained and voluminous additional document production had been made.

The court in *Morgan v. Pub. Storage* explained that these type of substantial risks should be considered when entering a fee award in a class action. *See Morgan*, 301 F. Supp. at 1253. "Without the 'bonus' from a contingency fee arrangement, 'very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks involved in recovering nothing.'" *Id*. This factor also weighs in favor of the requested fee award.

### viii.    The Time Required to Reach a Settlement

Class Counsel attempted to reach a settlement of the *Brink* matter by engaging in an early mediation. Despite these efforts, a suitable settlement could not be reached, and Class Counsel continued to prosecute these actions for several years until the recent mediated settlement agreement was obtained. The long period of time it took to reach the eventual settlement further supports the requested fee award. *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 WL 5905415, at *8 (S.D. Fla. Nov. 9, 2018) (explaining the fee award was supported because "despite Class Counsel's efforts to accelerate the resolution of this proceeding, an early

settlement was neither advisable nor possible. This was not a case where counsel negotiated for a quick, cheap settlement. The settlement here came only after two years of vigorously-contested litigation, on the virtual eve of trial."). Thus, this factor further supports the requested fee award.

*ix.*    ***Non-Monetary Relief***

In addition to the monetary relief, Defendants have agreed to modify the language of the Passport Account Agreement. The Passport Account Agreement terms and other disclosures and information provided thereafter to all current and existing Passport Account clients effective July 1, 2019 will omit the following language:

> Processing Fees are not commissions but are to defray the expenses incurred in facilitating the execution and clearing of Client's portfolio transactions. The actual expenses incurred by [Name of Entity] for any given transaction may be less than or greater than the Processing Fee.

Defendants shall also include the following disclosure related to Processing Fees in Passport Account Agreements:

> The Passport Accounts are investment advisory accounts that include an advisory fee on the assets in your account and a per transaction charge (the "Transaction Fee") that generates additional revenue and may result in profit to Raymond James. The Transaction Fee is $15.00 per transaction, except for certain Non-Partner Mutual Fund purchases, which are subject to a $40.00 transaction fee. Transaction Fees do not apply to ERISA plans. The applicable standard advisory fee is reflected in the schedule below.

This non-monetary relief provides significant benefit to the Settlement Classes by providing full disclosure of the nature of the fees incurred for transactions in the future. This non-monetary relief further supports the fee award in this case. *Camden I*, 946 F.2d at 772.

### B. The Court Should Award Class Counsel Their Costs and Direct Administrative Costs to Be Paid Out of the Common Fund

In addition to the fee award, upon submission of documentation, Class Counsel are entitled to the reimbursement of reasonable and necessary out of pocket expenses incurred in the course of activities that benefited the class. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d

-15-

1291, 1298 (11th Cir. 1999).   Class Counsel has incurred $261,491.85 in costs for experts, mediation, Claims Administration costs in the *Brink* Matter prior to settlement, and travel and other expenses.   *See* Manuel Garcia-Linares' Declaration at ¶ 8 and accompanying exhibits; Sarah Hanley Declaration at ¶ 8 and accompanying exhibits.

Pursuant to the Stipulation of Settlement, Class Counsel requests that the Court direct all future Administrative Expenses be paid out of the Common Fund.   *See* Stipulation of Settlement at § 7.2. [2]

### C. The Court Should Award the Requested Incentive Awards to the Class Representatives

The Court should approve an incentive award of $75,000.00 to Jyll Brink, $25,000.00 to Caleb Wistar, and $25,000.00 to Ernest Mayeux.   "In instituting this litigation, the Representative Plaintiffs have acted as private attorneys general seeking a remedy for what appeared to be a public wrong. It is well recognized that private class action suits are a primary weapon in the enforcement of laws designed for the protection of the public."   *Pinto v. Princess Cruise Lines*, Ltd., 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007).   Under these circumstances, courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred.   *Id*.

> Courts generally consider a series of factors in determining an incentive award, including: "(1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation."

*Cabot*, 2018 WL 5905415, at *9.

---

[2] The Stipulation of Settlement is attached as Exhibit "A" to the Joint Motion for Preliminary Approval of Class Action Settlement and for Certification of the Settlement Subclasses.   [Joint Motion for Preliminary Approval of Class Action Settlement and for Certification of the Settlement Subclasses, D.E. 179 at Exhibit "A."]

The request for different fee awards amongst the Class Representatives reflects the additional amount of time that Ms. Brink devoted to the case due to the posture of the *Brink* litigation and the longer period of time the *Brink* matter was pending.  While all three of the Class Representatives were diligent and committed to seeing the litigation through to trial, Ms. Brink was the first Plaintiff to initiate the suit, assisted with crafting the complaint and causes of action, assisted with voluminous written discovery, sat for a deposition, and attended multiple hearings and two mediation sessions.  Mr. Mayeux and Mr. Wistar filed suit later and also substantially supported Class Counsel by assisting with the responses to written discovery and travelled to attend the mediation held in Florida.

By assisting with the litigation, and attending and offering input at mediation, the three Class Representatives served a vital role in obtaining the settlement relief.   Therefore, the Classes benefited enormously from these Class Representatives' efforts.   The Class Representatives also took on personal financial risk by prosecuting these actions.  If Defendants had prevailed, the Class Representatives could have been responsible for paying Defendants' costs.  *See* Fed. R. Civ. P. 54 (d)(1).

The $75,000.00 incentive award amounts to 0.5% of the Common Fund, and the $25,000.00 incentive awards amount to 0.1666% of the Common Fund.  These awards fall well within the range of awards made in prior cases.  *See, e.g., Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (awarding 1.5% of the settlement fund collectively to class representatives as incentive awards); *Morgan*, 301 F. Supp. 3d at 1252 (awarding an incentive award of 0.2% of common fund);  *Cabot*, 2018 WL 5905415, at *11 (approving an incentive award of $50,000.00 to each of the class representatives).

## IV. CONCLUSION

For the foregoing reasons, the Plaintiffs, JYLL BRINK, CALEB WISTAR, and ERNEST MAYEAUX, respectfully request that this Court: (a)  award Class Counsel $6,000,000.00 in attorneys' fees to be paid out of the Common Fund; (b) award $$261,491.85  for reimbursement of costs and direct all future costs be paid out of the Common Fund; and (c) award incentive awards of $75,000.00 to Jyll Brink, $25,000.00 to Caleb Wistar, and $25,000.00 to Ernest Mayeux to be paid out of the Common Fund.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rules 7.1(a)(3), undersigned counsel certifies that pursuant to the Stipulation of Settlement entered between the Parties, Defendants take no position with respect to the relief requested herein.     *See* Stipulation of Settlement at ¶ 8.1, attached as Exhibit "A" to the Joint Motion for Preliminary Approval of Class Action Settlement and for Certification of the Settlement Subclasses, D.E. 179.

Dated: July 12, 2019

Respectfully submitted,

By: */s/ Nathaniel M. Edenfield*
Manuel A. Garcia-Linares (FBN: 985252)
mlinares@daypitney.com
mlinares@daypitney.com
Mark A. Romance (FBN: 021520)
mromance@daypitney.com
**DAY PITNEY/RICHMAN GREER**
396 Alhambra Circle
North Tower, 14th Floor
Miami, Florida 33134
Telephone: (305) 373-4000
Facsimile: (305) 351-8437
*Co-Counsel for Plaintiff*

and

Gary S. Betensky (FBN: 434302)
gbetensky@daypitney.com
lsabatino@daypitney.com
Nathaniel M. Edenfield (FBN: 91034)

nedenfield@daypitneycom
lsabatino@daypitney.com
**DAY PITNEY/RICHMAN GREER**
250 Australian Avenue South, Suite 1504
West Palm Beach, FL 33401
Telephone: (561) 803-3500
Facsimile: (561) 790-8756
*Co-Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 12, 2019 a true and correct copy of the foregoing document was electronically filed with the Clerk using the CM/ECF filing system and served upon on all counsel of record or pro se parties below, either via transmission of Notices of Electronic Filing generated by the CM/ECF filing system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

G. Calvin Hayes, Esq.
Samuel W. Braver, Esq.
**Buchanan Ingersoll & Rooney PC**
401 E. Jackson Street, Suite 2400
Tampa, FL 33602
calvin.hayes@bipc.com
braversw@bipc.com
*Counsel for Defendant*

Darren Blum, Esq.
**Blum Law Group**
110 E. Broward Blvd., Suite 1700
Ft. Lauderdale, FL 33301
blum@stockattorneys.com
*Co-Counsel for Plaintiff*

Sara Hanley, Esq.
**Hanley Law, PA**
3200 Tamiami Trail N. #200
Naples, FL 34103
Hanley@FINRALawyer.org
*Co-Counsel for Plaintiff*

Eric M. Sodhi, Esq.
Joshua L. Spoont, Esq.
**Sodhi Spoont PLLC**
3050 Biscayne Blvd., Suite 904
Miami, FL 33137
eric@sodhispoont.com
josh@sodhispoont.com
service@sodhispoont.com
*Co-Counsel for Plaintiff*

Lyle E. Shapiro, Esq.
**Herskowitz Shapiro, PLLC**
One Datran Center
9130 S. Dadeland Blvd., Suite 1609
Miami, FL 33156
lyle@hslawfl.com
*Co-Counsel for Plaintiff*

By: /s/ *Nathaniel M. Edenfield*
Nathaniel M. Edenfield